606 S.E.2d 508

The STATE, Respondent,

v.

Johnny Phillip SWEAT, Appellant.

No. 3898.

Court of Appeals of South Carolina.

Heard Nov. 9, 2004.
Decided Dec. 6, 2004.

120

Assistant Appellate Defender Aileen P. Clare, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Deputy Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Ralph E. Hoisington, of Charleston, for Respondent.

ANDERSON, J.:

Johnny Phillip Sweat (Sweat) appeals his convictions of first-degree burglary, assault and battery with intent to kill, and three counts of assault of a high and aggravated nature. Sweat contends the trial judge erred in admitting evidence of a prior bad act of domestic abuse. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

Robin Sweat (Robin) and Sweat lived together for approximately nine years and had two children together. Although they had participated in a marriage ceremony, Robin discovered that Sweat was still married to a previous wife, and, therefore, Robin and Sweat were not legally married. She reported Sweat for criminal domestic violence in October of 2001 (the October incident). While he was in jail for that offense, she moved in with her brother, Chris Hasty, and became romantically involved with Bobby Blake (Blake). The incident giving rise to the convictions at issue on appeal took place on December 11, 2001—eleven days after Sweat was released from jail for the October incident.

Sweat invaded a home occupied by Robin; Robin's brother, Chris Hasty; Robin's boyfriend, Blake; Hasty's roommate, John Greene; a friend, Deon Dent; and two children: Robin's oldest son, Robert; and Deon's nephew. Sweat, brandishing a knife, forced his way through the front door. Robin and Blake were in a bedroom and the others were in the living room. Sweat began yelling and continued waving the knife. Robin and Blake emerged from the bedroom to investigate the commotion. Sweat became more upset when he saw Robin and Blake. Robin, Blake, Hasty, and Greene retreated to a back bedroom, and Blake held the door shut as Sweat attempted to enter. Sweat eventually opened the door enough to insert his arm—with knife in hand—into the room. He continued to swipe with the knife and severely cut Blake on the hand.

Unable to breach the bedroom from the inside, Sweat exited the house and attempted to enter the bedroom through an outside window. He broke the window, but was unable to fully enter the room because the headboard of a waterbed was blocking the window. He returned inside the house, again

trying to breach the back bedroom. Unsuccessful, Sweat finally left. He was apprehended the next day.

At trial, the State introduced Robin's testimony—first *in camera*, and then in the presence of the jury—of the incident of domestic violence that took place in October of 2001. Robin, Sweat, and Sweat's brother and sister-in-law were together when Sweat directed Robin to take off her shirt and show his brother her breasts. When Robin refused, Sweat began yelling and calling her a "fat bitch." He attempted to physically pull off her shirt, and in the ensuing struggle, Robin's arm was bruised.

A few days later, Robin reported the October incident to the authorities. She explained at trial that she desired to end the relationship and saw the incident as her opportunity to escape. Sweat was arrested for criminal domestic violence. He spent forty-five days in jail, but was released after Robin signed a statement that the October event did not actually happen. At trial, Robin averred that she copied the statement at the request of her sister-in-law and acquiesced in signing it because "I was out of the situation. And that's all I was worried about, was getting out."

Additionally, Robin gave a general account of the authoritarian and imperious personality of Sweat, which consisted of: (1) dictating when and what she could eat; (2) hanging up or breaking the telephone if she stayed on too long; (3) compelling her to drink alcoholic beverages; and (4) forcing her to have sex.

Defense counsel moved to exclude evidence of prior episodes of domestic violence on the grounds that it was impermissible character evidence. The State argued that the prior evidence was admissible to show motive and intent. Sweat objected that: (1) the evidence was irrelevant; (2) it could not be shown by clear and convincing evidence; and (3) its prejudicial effect substantially outweighed its probative value. After an *in camera* review, the trial judge ruled evidence of the October incident was admissible to show motive and intent and to provide a full picture of the events leading up to the night of the attack. However, the trial judge disallowed other instances of domestic violence because she found them irrelevant and unfairly prejudicial.

On appeal, Sweat argues admission of the October incident was error. We disagree and affirm.

## LAW/ANALYSIS

### I. Rule 404(b), SCRE/*Lyle*

■ Generally, South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged. *State v. Beck,* 342 S.C. 129, 536 S.E.2d 679 (2000); *State v. Gillian,* 360 S.C. 433, 602 S.E.2d 62 (Ct.App.2004); *State v. Mathis,* 359 S.C. 450, 597 S.E.2d 872 (Ct.App.2004); *State v. Weaverling,* 337 S.C. 460, 523 S.E.2d 787 (Ct.App.1999). In *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923), our supreme court articulated the exceptions to this general rule excluding bad character evidence. Evidence of prior bad acts is admissible when it tends to establish (1) motive; (2) intent; (3) absence of mistake; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) the identity of the person charged with commission of the present crime. *Lyle* at 416, 118 S.E. at 807; *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990); *State v. Pagan,* 357 S.C. 132, 591 S.E.2d 646 (Ct.App.2004); *see also Anderson v. State,* 354 S.C. 431, 581 S.E.2d 834 (2003) (explaining that Rule 404(b), SCRE, the modern expression of the *Lyle* rule, excludes evidence of other crimes, wrongs, or acts offered to prove character of person in order to show action in conformity therewith; the rule creates an exception when testimony is offered to show motive, identity, existence of common scheme or plan, absence of mistake or accident, or intent).

■ "In *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001), the Supreme Court articulated the appropriate standard of review on appeal in determining the admissibility of bad act evidence: 'In criminal cases, the appellate court sits to review errors of law only. *State v. Cutter* 261 S.C. 140, 199 S.E.2d 61 (1973).' " *State v. Humphries,* 346 S.C. 435, 448, 551 S.E.2d 286, 293 (Ct.App.2001) (Anderson, concurring) *rev'd on other grounds,* 354 S.C. 87, 579 S.E.2d 613 (2003); *see also State v. Tutton,* 354 S.C. 319, 327, 580 S.E.2d 186, 190 (Ct.App.2003) (determining whether trial judge properly admitted evidence

under common scheme or plan exception to *Lyle* is a "question of law.").

## A. Motive and Intent

At the conclusion of Robin's *in camera* testimony, the trial judge ruled the October incident was admissible under both the motive and intent exceptions of Rule 404(b) and *Lyle*. In reaching her decision to admit evidence of the October incident, the trial judge stated:

> But I do perceive that it is logically relevant and that . . . the State is entitled to give a full snapshot of what happened.
>
> I do not think you can isolate out—this is the incident that started the continuum and does show his intent in going there that evening and his motive in going there that evening.
>
> Which is . . . according to the State's theory . . . . that she was his property and that he was going there to get his property. . . .

We agree that both motive and intent can be inferred from the prior bad act. Following the October assault, Robin reported Sweat's conduct and Sweat spent forty-five days in jail. He was released eleven days before the December incident occurred. Robin became involved with Blake and refused to resume her relationship with Sweat. Within days, Sweat perpetrated the December 11 attack. Thus, the October incident and Sweat's time in jail relate to his actions on December 11, 2001.

The State had to prove malice as an element of assault and battery with intent to kill (ABIK). *See State v. Wilds,* 355 S.C. 269, 584 S.E.2d 138 (2003) ("ABIK is an unlawful act of violent nature to the person of another with malice aforethought, either express or implied."). "Generally, motive is not an element of a crime that the prosecution must prove to establish the crime charged, but frequently motive is circumstantial evidence . . . of the intent to commit the crime when intent or state of mind is in issue." Danny R. Collins, *South Carolina Evidence* 319 (2d ed.2000). "State of mind is an issue any time malice or willfulness is an element of the

crime." *Id.* Therefore, the October incident was properly admitted.

In *State v. Thomas,* 248 S.C. 573, 151 S.E.2d 855 (1966) *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (abrogating the doctrine of in favorem vitae), the defendant was convicted of rape. Our supreme court found evidence the defendant had previously stolen the victim's watch was properly admissible under the motive exception to *Lyle.* The victim had testified against the defendant for stealing the watch. The defendant allegedly said to the victim on the night of the rape, " 'It's me and I have come to kill you. I have planned it every single day since you put me on the chaingang for stealing your watch.' " *Thomas,* 248 S.C. at 576, 151 S.E.2d at 857. In affirming the admission of the prior bad act, the court concluded:

> We think that all of the evidence here, which only incidentally tended to prove the commission of other crimes, by appellant is governed by exceptions to the general rule, and that such was, therefore, admissible.... The evidence with respect to the prior crime, the theft of [the victim's] watch, was restricted to the minimum requirements of the case and tended directly and fairly to prove not only the identity of the appellant, but his motive as well.

*Id.* at 583, 151 S.E.2d at 861.

*State v. Plyler,* 275 S.C. 291, 270 S.E.2d 126 (1980) dealt, in part, with the motive exception to *Lyle* in the context of murder. The defendant claimed the trial court erred by allowing evidence of prior ill will between he and the defendant. The supreme court disagreed:

> The prosecution elicited testimony concerning a verbal altercation between the victim and the appellant three days prior to the killing. In a non-responsive answer, the witness additionally indicated that there had been prior bad blood between the two. Upon objection and motion from defense counsel for a mistrial, the trial judge ordered the remark concerning bad blood stricken from the record and instructed the jury to disregard the comment. The motion for a mistrial was denied. The appellant now asserts these rulings were trial error and entitled him to relief. We do not agree.

> **Evidence of previous difficulties or ill feelings between the accused and the victim and of facts showing the cause of such difficulties or ill will is admissible on the question of motives where there is some connection of cause and effect between the evidence and the crime.** 40 C.J.S., Homicide, Section 228.
>
> The challenged evidence tends to show motive on the part of the accused and is not so remote in time as to negate its probative value.

*Id.* at 296, 270 S.E.2d at 128 (emphasis added).

*Thomas* and *Plyler* lend further support to the trial judge's decision in this case. From the October incident, the jury could have inferred both (1) motive—that Sweat was driven by anger over Robin causing him to go to jail and terminating their relationship, and that he intended to "get his property"; and (2) intent—that Sweat maliciously sought to inflict harm upon Robin and Blake. Therefore, we find the trial judge did not commit error by allowing the October incident under the motive and intent exceptions of *Lyle* and Rule 404(b), SCRE.

### B. Relevance

█ Sweat contends that even if the October incident fits under the motive and intent exceptions, it should have been excluded because it was irrelevant. We disagree.

For evidence to be admissible, it must be relevant. Rules 401 & 402, SCRE; *State v. Varvil*, 338 S.C. 335, 340, 526 S.E.2d 248, 251 (Ct.App.2000); *see also State v. Pagan*, 357 S.C. 132, 591 S.E.2d 646 (Ct.App.2004) (stating bad act must logically relate to the crime with which the defendant has been charged). Evidence which assists the jury in arriving at the truth of an issue is relevant and admissible unless otherwise incompetent. *State v. Schmidt*, 288 S.C. 301, 303, 342 S.E.2d 401, 403 (1986).

█ " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears, and it is not required that the

inference sought should necessarily follow from the fact proved. *State v. Hamilton,* 344 S.C. 344, 354, 543 S.E.2d 586, 591 (Ct.App.2001).

Evidence is admissible if "logically relevant" to establish a material fact or element of the crime; it need not be "necessary" to the State's case in order to be admitted. *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990). "The record must support a logical relevance between the prior bad act and the crime for which the defendant is accused." *State v. King,* 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999). If the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected. *State v. Brooks,* 341 S.C. 57, 533 S.E.2d 325 (2000).

Determination of relevancy is largely within the discretion of the trial judge. *State v. Jeffcoat,* 279 S.C. 167, 170, 303 S.E.2d 855, 857 (1983); *Hamilton* at 353, 543 S.E.2d at 591. The trial judge must have wide discretion on innumerable questions of relevancy before her, and her decision should be reversed only for abuse of that discretion. *State v. Anderson,* 253 S.C. 168, 182, 169 S.E.2d 706, 712 (1969).

The October incident was relevant as it suggested motive and intent and tended to make the State's version of the case more probable. While not strictly necessary to the State's case, it was logically related to why Sweat went to the house that night and to his intentions once there. We find the trial judge did not abuse her discretion by concluding the October incident was relevant to the event that took place on December 11, 2001.

### C. Standard of Proof for Prior Bad Acts

If not the subject of a conviction, a prior bad act must first be established by clear and convincing evidence. *State v. Beck,* 342 S.C. 129, 536 S.E.2d 679 (2000); *State v. Smith,* 300 S.C. 216, 387 S.E.2d 245 (1989); *State v. Mathis,* 359 S.C. 450, 597 S.E.2d 872 (Ct.App.2004). In *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001), the South Carolina Supreme Court elucidated:

[W]e do not review a trial judge's ruling on the admissibility of other bad acts by determining *de novo* whether the evidence rises to the level of clear and convincing. If there is **any evidence** to support the admission of the bad act evidence, the trial judge's ruling will not be disturbed on appeal.

*Id.* at 6, 545 S.E.2d at 829 (emphasis added); *accord Pagan*, 357 S.C. at 143, 591 S.E.2d at 652; *State v. King*, 349 S.C. 142, 155, 561 S.E.2d 640, 646 (Ct.App.2002).

The record contains ample evidence to satisfy the "any evidence" standard articulated in *Wilson*. The trial judge conducted an extensive *in camera* review and was satisfied the standard was met. Robin testified the incident occurred. Sweat was arrested for criminal domestic violence and served jail time because of the incident. Additionally, Blake declared at trial that he saw the bruises on Robin's arm. Thus, evidence exists to support the trial judge's finding that the October incident took place. *See State v. Beck*, 342 S.C. 129, 536 S.E.2d 679 (2000) (finding prior bad act established by clear and convincing evidence where witness testified defendant robbed her); *cf. State v. Pierce*, 326 S.C. 176, 485 S.E.2d 913 (1997) (finding trial judge erred in admitting testimony that child abuse victim had previously been treated for injuries where State failed to offer **any proof** the injuries were inflicted by defendant). We find no error.

### D. Probative Value/Unfair Prejudice

Even though the relevant evidence is clear and convincing and falls within a *Lyle* exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Rule 403, SCRE; *State v. Braxton*, 343 S.C. 629, 541 S.E.2d 833 (2001); *State v. Gillian*, 360 S.C. 433, 602 S.E.2d 62 (Ct.App.2004). Unfair prejudice means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Alexander*, 303 S.C. 377, 382, 401 S.E.2d 146, 149 (1991); *see also State v. Bright*, 323 S.C. 221, 226, 473 S.E.2d 851, 854 (Ct.App.1996) ("Unfair prejudice from the introduction of evidence occurs when it has an undue tendency to induce a decision on an improper basis."). "The determination of prejudice must be based on

the entire record and the result will generally turn on the facts of each case." *State v. Wilson,* 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001).

A trial judge's decision regarding the comparative probative value and prejudicial effect of relevant evidence should be reversed only in exceptional circumstances. *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (2003); *see also State v. Myers,* 359 S.C. 40, 596 S.E.2d 488 (2004) (noting the supreme court reviews rulings balancing whether the probative value of evidence was substantially outweighed by its prejudicial effect pursuant to the abuse of discretion standard and gives great deference to the trial judge's decision). "If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *State v. Hamilton,* 344 S.C. 344, 358, 543 S.E.2d 586, 598 (Ct.App. 2001).

As to the October incident, the trial judge ruled: ". . . I do not find that its probative value is substantially out-weighed by the danger of unfair prejudice to the defendant." We agree. Testimony of the October incident was highly probative. It tended to show motive and intent, and it completed the State's theory of the case. Sweat testified that: (1) Robin called him multiple times a day; (2) he had filed a complaint against her; (3) she invited him to the house on December 11, 2001 to sign papers giving him temporary custody of their children; (4) Greene tried to slam the door in his face; (5) Blake initiated an attack on him and swung a stick at him; (6) Greene threatened him with a knife, which he took away and swung to fend off Greene and Blake; and (7) he never went inside the house. Consequently, the facts surrounding the December 11, 2001 occurrence were vigorously contested. Evidence of the October event was therefore probative in that it gave the jury the necessary background to explain why Sweat may have gone to the house that night and what his intentions may have been. While the prior act of domestic violence had some prejudicial effect on Sweat, we do not believe it was so prejudicial to "suggest a decision on an improper basis, such as an emotional one." *See State v. Cheeseboro,* 346 S.C. 526, 547, 552 S.E.2d 300, 311 (2001).

■  Sweat, citing *State v. DuBose*, 288 S.C. 226, 341 S.E.2d 785 (1986), argues even if the evidence was otherwise admissible, it lost its probative value by becoming too far removed from the event in question.  In *DuBose*, the defendant was convicted of manufacturing and trafficking marijuana.  He was arrested in 1984 after a pilot for SLED observed patches of marijuana growing on the defendant's father's farm.  The State was allowed to admit aerial photographs taken of the DuBose farmland during 1981–1983.  The supreme court, finding admission of these photographs was error, held: "Here there is a total failure of proof that DuBose grew marijuana in the fields shown in the aerial photographs from 1981 to 1983." *Id.* at 230, 341 S.E.2d at 787.

We disagree with Sweat that the October incident was too remote in time from the December crime to have probative value.  To the contrary, the incident occurred two months before the December attack, and Sweat was released from jail for the October incident a mere eleven days before the December attack.  *DuBose*, by contrast, dealt with evidence dating back several years.  Furthermore, unlike *DuBose*, the short passage of time in this case does not call into question the efficacy of the evidence admitted.  Whereas the *DuBose* court found "a total failure of proof" that DuBose was responsible for the marijuana in the photographs, the trial judge in this case found clear and convincing evidence that the October incident took place.

Sweat cites *State v. King*, 334 S.C. 504, 514 S.E.2d 578 (1999) to support his contention the October incident was too remote to have probative value.  In *King*, the defendant was found guilty of murdering his father-in-law who reportedly kept up to $1,800 in his wallet.  His wallet was not found at the crime scene.  The State introduced evidence that the defendant: (1) often needed money; (2) regularly pawned household items; (3) stole cash from his wife's purse; (4) forged checks on her bank account; and (5) used her ATM card without permission.  *Id.* at 511, 514 S.E.2d at 582.  The supreme court reversed his conviction based on the admission of this evidence of prior bad acts:

> The remote thefts were not admissible under any theory.  This evidence shows appellant's bad character and his propensity to commit crimes.  These are inadmissible purposes.

The temporal connection between these petty thefts and the charged crimes is too attenuated for admissibility under the *res gestae* theory or under *Lyle*. Thus the trial judge erred in admitting evidence of the remote thefts.

*Id.* at 513, 514 S.E.2d at 583. We find *King* distinguishable from the case at bar. First, the prior bad act in this case is more probative than the thefts in *King;* it bears a closer temporal and logical connection to the crime charged. In *King,* the State was allowed to admit evidence of a series of unrelated thefts that began over a year before the murder. In this case, the trial judge disallowed evidence of a string of instances of prior domestic violence. She allowed only the October incident precisely because it was so close in time and so factually related to the attack. *See State v. Beck,* 342 S.C. 129, 135, 536 S.E.2d 679, 682 (2000) ("The temporal attenuation between the making of this statement is of no consequence in assessing its admissibility. The four month lapse is at most a matter bearing on the weight of the evidence, which was for the jury to determine.").

Further, the only logical connection between the prior thefts and the murder in *King* was the inference that defendant often needed money, often stole to get it, and therefore might have murdered his father-in-law to obtain money. In other words, its introduction primarily tended to show his propensity to do wrong. Here, the October incident suggests **why** Sweat perpetrated the crimes on December 11—there is a cause and effect relationship between the two events. Thus, while in *King* the murder did not occur **because of** the prior thefts, the evidence here tends to show the December attack did occur **because of** the October incident and its consequences to Sweat. Concomitantly, Sweat's intervening jail time is a critical temporal nexus between the October and December incidents. Therefore, the October incident is appreciably more probative than the prior thefts in *King.*

Second, the October incident is less damaging than the thefts in *King.* The *King* court stressed that "[h]ere, all the evidence was circumstantial .... the evidence was not overwhelming. The admission of the remote thefts was too prejudicial to be held harmless." *Id.* at 514, 514 S.E.2d at 583. By contrast, overwhelming evidence placed Sweat at the house on

the night of December 11, 2001. And by Sweat's own admission, he inflicted the knife injury upon Blake.

Third, our courts have not established a bright-line rule for determining when evidence loses its probative value due to passage of time. Indubitably, we have established no such rule due to the fact-intensive nature inherent in a Rule 403 analysis. The determination of prejudice depends upon the unique circumstances of each case. *See Wilson,* 345 S.C. at 7, 545 S.E.2d at 830. Accordingly, the trial judge is given broad discretion in making the Rule 403 determination. *See Myers,* 359 S.C. at 48, 596 S.E.2d at 492. Under the facts of this case, we agree that the short passage of time did not diminish the probative value of the October incident. Thus, we find the trial judge did not abuse her broad discretion in concluding the probative value of this evidence outweighed its prejudicial effect.

## II. *Res Gestae*

"Under the *res gestae* theory, evidence of other bad acts may be an integral part of the crime with which the defendant is charged or may be needed to aid the fact finder in understanding the context in which the crime occurred." *State v. Gillian,* 360 S.C. 433, 602 S.E.2d 62 (Ct.App.2004) (citing *State v. Owens,* 346 S.C. 637, 552 S.E.2d 745 (2001); *State v. King,* 334 S.C. 504, 514 S.E.2d 578 (1999)); *see also State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003) (holding evidence of prior burglary was "necessary and relevant for a full presentation of the case."); *State v. Simmons,* 352 S.C. 342, 573 S.E.2d 856 (Ct.App.2002) (finding evidence of burglary occurring the same night as the burglary for which defendant was convicted "was necessary for a full presentation of the case without fragmentation."). Under this theory, it is important that the temporal proximity of the prior bad act be closely related to the charged crime. *Owens,* 346 S.C. 637, 552 S.E.2d 745.

Our supreme court, in *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996), explained the theory of *res gestae:*

One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presenta-

tion" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' [and is thus] part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "[t]here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae."

*Id.* at 122, 470 S.E.2d at 370–71 (quoting *United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (alterations in original)).

We find the October incident was properly admitted to "complete the story of the crime on trial." The prior act of domestic abuse gave Robin the opportunity to escape her relationship with Sweat. As a result, she moved out, and he spent time in jail. Sweat was upset, and eleven days after his release, these crimes occurred. The October abuse, and the events that followed, provided the fact finder with an appropriate context in which to place the December 11 attack. *See State v. King,* 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999) ("The *res gestae* theory recognizes that evidence of other bad acts may be an integral part of the crime with which the defendant is charged, or may be needed to aid the fact finder in understanding the context in which the crime occurred.").

## CONCLUSION

We hold evidence of the October incident was properly admitted to show motive and intent. The evidence tended to make Sweat's motive and intent more probable, and, therefore, was relevant. The record adequately supports the trial judge's finding the incident was proved by clear and convincing evidence. Furthermore, the incident was highly probative and not so prejudicial to Sweat to suggest a verdict based on an improper basis. Finally, the incident was correctly admitted, pursuant to *res gestae,* to complete the story of the crime

on trial. Accordingly, the convictions and sentences of Sweat are

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.