THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Henry Dondie Ellison, Jr., Appellant.
 
 
 

Appeal From Richland County
 James W. Johnson, Jr., Circuit Court Judge
Unpublished Opinion No. 2007-UP-177
Submitted April 2, 2007  Filed April 17, 2007

AFFIRMED

 
 
 
 Appellate Defender Aileen P. Clare of the South Carolina Commission on Indigent Defense, of Columbia; for Appellant.
 Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all  of Columbia; and Solicitor Warren B. Giese, of Columbia; for Respondent.
 
 
 

PER CURIAM:  Appellant, Henry Dondie Ellison, Jr., appeals his convictions of burglary in the first degree, kidnapping, assault and battery with intent to kill (ABIK), and violation of an order of protection, asserting the trial court erred in admitting evidence of a prior bad act.  We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
Ellisons convictions arose from an attack on Permeco Myers that occurred on October 16, 2004.  Permeco testified at trial to the events leading up to the attack.  She stated that she had known Ellison for over twenty years, the two being involved in an on and off relationship during that time.  In June 2003, Ellison moved into Permecos home.  Permeco and Ellison lived together for a little over a year, until Permeco obtained an order of protection against Ellison.  She testified that in August 2004, she was asleep in bed when Ellison came into the bedroom and began choking her.  Ellison accused Permeco of seeing another man behind his back.  Permeco tried to explain that was not the case, but Ellison was very upset.  When she denied the accusation, Ellison began slapping her.  Ellison loaded a gun and told Permeco, Im going to have to kill you like the lady across the street, referring to an incident a few months earlier where a man had killed a woman who lived across the street and then killed himself.  Ellison then forced Permeco to open her mouth, at which time he put the barrel of the gun in her mouth.  During this time, Ellison was still fussing at Permeco, but began to calm down and started to apologize to her, stating that he was not going to kill her.  Ellison told Permeco, however, that he would kill her if she called the police.  To assuage his fear and convince him she would not go to the police, Permeco told Ellison she would take the next day off from work.  They both stayed home from work that next day.
 
The following day, Permeco went to work and used that opportunity to call the police in order to get some information on how she could get Ellison out of her house.  She ultimately contacted Sistercare, and was put in touch with a legal advocacy person, Ms. Gilyard.  When Permeco went to see Ms. Gilyard, they filled out an order of protection.  The order was not served that day, however, as they determined Permeco should try to talk to Ellison first and see if he would voluntarily agree to move out.  Permeco left the paperwork with Ms. Gilyard and went to a hotel room, concerned with Ellisons reaction to her visit to Sistercare.  Permeco stayed in the hotel room overnight.  When she informed Ellison about the matter, he was not happy, but he agreed to remove his belongings from the house.  Permeco expected Ellison to have moved his things when she returned home, but he had not.  When Ellison came back to the house, he told Permeco he needed more time.  A week went by and Permeco continued to remind Ellison that he promised to leave.  After three or four weeks, Permeco returned to Sistercare because Ellison was still in the home and he had again been accusing her of seeing someone else.  During this entire time, Permeco was frightened.  She informed Ms. Gilyard she was leaving town, and she requested emergency leave from her employer.  The police were going to serve notice of the hearing for an order of protection, and Permeco quickly left Columbia, staying out of town with a cousin approximately one week until the hearing on the matter.  Thereafter, when Permeco arrived at the courthouse, Ellison approached her and tried to convince her not go inside for the hearing.  Permeco and Ellison both attended the hearing and an order of protection was issued, which directed Ellison to vacate the home by 3:00 that afternoon, October 7, 2004.  In her affidavit supporting her request for an order of protection, Permeco related that on August 17, 2004, Ellison yelled at her, slapped her, choked her, pointed a gun at her and threatened to kill her if she were to go to the police. 
 
During the next week, Permeco had locks in her home changed.  On October 16, she returned to her home from the grocery store around 1:00 or 2:00 in the afternoon.  She used her keys to unlock her front door.  When she entered the doorway between her living room and kitchen, she looked up and saw Ellison standing there.  As she began to speak, she was hit in the head with a bottle, and fell to the floor.  Ellison then picked Permeco up by her shirt and slapped her with an open hand, causing her to fall back to the floor.  He picked her up again and began fussing and calling [her] all kinds of names.  Ellison took Permeco through the kitchen, opening drawers and looking for tape.  He retrieved two knives, bolted the front door, and took Permeco to the bedroom.  Ellison sat Permeco on the bed and used the tape to tie her hands.  He continued to curse Permeco and call her names.  He then made her stand up, and got behind her.  Ellison started taking [one of the knives] across [her] neck.  He stated that the order of protection meant nothing to him.  Ellison remained behind Permeco and continued fussing.  At one point, the floor made a creaking sound and Ellison stabbed Permeco in the right thigh, making the comment, Now you see that Im serious.  Ellison held his hand over Permecos mouth.  He was still talking and was angry.  He then stabbed Permeco in the chest.  She fell to the ground and pretended she was dead.  As Permeco lay on the floor, Ellison hollered, Come and get me because I have lost everything I love.  Permeco did not move or say anything, but continued to play dead.  Ellison got behind her on the floor and held Permeco.  He then carved their initials on the baseboard of the bed.  He also cut off chunks of Permecos hair.  After Permeco had been on the floor for awhile, Ellison stated, I know youre not dead.  God didnt mean for me to kill you.  At that point, based on what he had said during the August assault and the fact that he did not kill her during that incident, she believed Ellison was not going to kill her, and she slowly just came out of it.  Ellison helped Permeco to her feet, helped her change her clothes, cut the tape off her hands, and put her in the bed.  After awaking the next morning, Permeco thought she heard Ellison using the telephone.  Once she believed he had left the home, she called an ambulance.  Upon arrival at the hospital, Permeco was found to have sustained two stab wounds to the chest, one of which was approximately one and a half inches deep.  She also suffered abrasions across her neck, a fractured bone in her left cheek, and one stab wound each to the thigh and flank.  Investigators determined the perpetrator apparently gained access to the home through a window above the sink in Permecos kitchen that had been broken into from the outside. 
 
Prior to trial, Ellisons attorney made a motion to exclude evidence of the August incident.  Counsel noted the State sought to admit the evidence pursuant to the motive and intent exceptions under State v. Lyle.[2]  Agreeing that the evidence would be probative of motive and intent,[3] counsel nonetheless asserted the August incident was inadmissible under Rule 403, SCRE,[4] as the prejudicial effect of the prior bad act outweighed the probative value of the evidence.  Counsel maintained, because the defense was not disputing there was a valid order of protection, any probative value concerning the August incident itself was outweighed by its prejudicial effect and was therefore inadmissible pursuant to Rule 403, SCRE.  The State countered that, not only was the evidence probative of motive, but also tended to establish the malice element of the ABIK charge.  Additionally, the State argued the evidence was admissible under the res gestae theory.  The trial court held an in camera hearing on the matter at which time Permeco related the unfolding events.  Based on the testimony presented, the trial court found the probative value of the evidence was not outweighed by its prejudicial effect, and permitted the introduction of the prior incident to show motive, intent, and malice. 
 
STANDARD OF REVIEW
In criminal cases, this court sits to review errors of law only and is bound by the trial courts factual findings unless those findings are clearly erroneous.  State v. Wilson, 345 S.C. 1, 5-6, 545 S.E.2d 827, 829 (2001).  The trial courts decision to admit evidence, including prior bad act evidence, is reviewed under an abuse of discretion standard.  Id. at 6, 545 S.E.2d at 829.  Thus, we do not re-evaluate the facts based on our own view of the preponderance of the evidence, but simply determine whether the trial judges ruling is supported by any evidence.  Id.
LAW/ANALYSIS
On appeal, Ellison contends the trial court erred by admitting evidence of his prior bad act because the evidence was not necessary to prove motive or intent, and the prejudicial effect of the evidence outweighed its probative value.  Ellison maintains the State needed only to produce the order of protection to prove violation of the same, and the details underlying the order were neither relevant nor necessary.  He further asserts his motive and intent during the October incident could have been inferred from the circumstances surrounding the charges, including the alleged burglary, kidnapping, and the extent of Myers injuries.  He therefore argues the details of the August assault were not relevant to the current charges or necessary to prove any material fact in issue.  Additionally, Ellison contends, even if the August incident details were relevant, the prejudicial effect of this evidence outweighed its probative value.   We disagree.
Evidence of other crimes or bad acts is inadmissible to prove the character of a person in order to show action in conformity therewith.   Such evidence may be admissible, however, to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.  Rule 404(b), SCRE;  State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923).  Importantly, the bad act must be logically relevant to the crime with which the defendant is charged.  State v. Beck 342 S.C. 129, 135, 536 S.E.2d 679, 682-83 (2000).  Even if the prior bad act evidence is relevant, it must nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  Rule 403, SCRE.  State v. Smith, 337 S.C. 27, 33, 522 S.E.2d 598, 601 (1999).  Thus, after conducting a Lyle/Rule 404(b) analysis and finding evidence of a prior bad act both relevant and admissible as a prior bad act, the trial court must conduct a Rule 403, SCRE analysis to determine whether the evidence should be excluded as unduly prejudicial.  Beck, 342 S.C. at 136, 536 S.E.2d at 683.
Additionally, evidence of prior bad acts may also be properly admitted as part of the res gestae of the crimes for which the defendant is charged.  Under the res gestae theory, evidence of other bad acts may be considered an integral part of the crime with which the defendant is charged or may be needed to aid the fact finder in understanding the context in which the crime occurred.  State v. Owens, 346 S.C. 637, 652, 552 S.E.2d 745, 753 (2001) overruled on other grounds by State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005).  Our Supreme Court proclaimed the following in regard to this theory:

 One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . . [and is thus] part of the res gestae of the crime charged.   And where evidence is admissible to provide this full presentation of the offense, [t]here is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae.

State v. Adams, 322 S.C. 114, 122, 470 S.E.2d 366, 370-71 (1996) (quoting United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980) (alterations in original)).   Even if the evidence is relevant under this theory, the trial court must, as it does following a Lyle/Rule 404(b) analysis, conduct a Rule 403, SCRE analysis, determining whether the probative value outweighs the prejudicial effect.  Owens, 346 S.C. at 652, 552 S.E.2d at 753.  
 
We first note, while Ellison argued before the trial court that the prejudicial effect of the prior bad act outweighed its probative value, he conceded that the August incident was probative of motive and intent.  Because Ellison did not argue below that the August incident was not relevant, but conceded this point, his assertion to the contrary on appeal is not preserved for our review.  See  State v. Benton, 338 S.C. 151, 156-57, 526 S.E.2d 228, 231 (2000) (noting an issue conceded to the trial court cannot be raised on appeal).
At any rate, we find no error in the trial courts determination that the evidence was probative of motive and intent.  At trial, the defense did not contest the assault on Permeco, but maintained Ellison was not the perpetrator.  In the August incident, Ellison became suddenly violent with Permeco, indicated that he was contemplating killing her at that time, and stated he would kill her if she later went to the police.  Less than ten days after the issuance of the order of protection that was based on the August incident, Permeco was assaulted.  Thus, the prior bad act evidence is logically relevant to show Ellisons motive and intent.  Further, as noted by the trial court, the August incident was relevant to the issue of malice.  Here, the State was required to prove malice as an element of the ABIK charge.  State v. Sweat,  362 S.C. 117, 124, 606 S.E.2d 508, 512 (Ct. App. 2004).  While motive, generally, is not an element the prosecution must prove to establish a crime, motive frequently is circumstantial evidence of the intent to commit the crime when intent or state of mind is an issue. Id.  When malice or willfulness is an element of the crime, state of mind is an issue.  Id. at 124-25, 606 S.E.2d at 512.
We further find the prior bad act evidence was admissible under the res gestae theory.[5]  The August incident furnishes part of the context of the crime and allows for a full presentation of the case.  It is intimately connected with and explanatory of the crimes charged against Ellison and its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.  State v. Adams, 322 S.C. 114, 122, 470 S.E.2d 366, 370-71 (1996).  
 
It is further important to note the substantial factual similarity between the present case and State v. Sweat, 362 S.C. 117, 606 S.E.2d 508 (Ct. App. 2004).  In Sweat, the victim reported Sweat for criminal domestic violence in October 2001.  Sweat was released from jail after the victim signed a statement indicating the October incident did not actually occur.  On December 11, 2001, eleven days after being released from jail, the incident giving rise to Sweats convictions of first-degree burglary, AWIK and three counts of assault and battery of a high and aggravated nature took place.  Id. at 121-22, 606 S.E.2d at 510-11.  This court determined evidence of the October incident was admissible to show motive and intent for the December crimes.  Id. at 124-26, 606 S.E.2d at 512-13.  As in Sweat, we find the prior bad act evidence was probative, as the jury could infer from the August incident both motive and intent; the motive being that Ellison was driven by anger that Permeco was severing her relationship with him and the intent being that Ellison maliciously sought to inflict harm on Permeco.  Additionally, this court held the prior bad act evidence in Sweat was admissible under the res gestae theory, as it tended to complete the story of the crime on trial.  Id. at 133, 606 S.E.2d at 517.  As was the case in Sweat, the prior abuse and the events that followed provided the fact finder with the appropriate context in which to place the subsequent attack on which the current charges were based.  Id.
Ellison contends, however, even if the August incident was relevant to the current charges, the prejudicial effect of this prior bad act outweighs its probative value.  We disagree.
Evidence is considered unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as an emotional one.  State v. Cheeseboro, 346 S.C. 526, 547, 552 S.E.2d 300, 311 (2001).  Whether prejudicial error has been committed must be determined on the basis of the entire record and the result will generally turn on the facts of each case.  State v. Wilson, 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001).  As previously noted, this court reviews the trial courts decision to admit prior bad act evidence under an abuse of discretion standard and simply determines whether the trial courts ruling is supported by any evidence.  Further, our supreme court has specifically noted that the appellate court reviews a trial courts Rule 403, SCRE ruling, balancing whether the probative value of evidence was substantially outweighed by its prejudicial effect, pursuant to the abuse of discretion standard, and gives great deference to the trial courts decision.  State v. Myers, 359 S.C. 40, 48, 596 S.E.2d 488, 492 (2004).  The evidence of the prior assault on Permeco is clearly probative of Ellisons motive and intent, and helps furnish the context of the crime under the res gestae theory.  Although the evidence of the August assault by Ellison on Permeco is certainly prejudicial, we cannot say it is unduly so.  Accordingly, we find no abuse of discretion in the trial courts admission of this evidence.
For the foregoing reasons, appellants convictions are
AFFIRMED.
HUFF, BEATTY, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] 125 S.C. 406, 118 S.E. 803 (1923).
[3] Specifically, counsel for Ellison stated, My main argument on that would not be so much that it doesnt go to motive and intent.  I think I would have to concede that there would be an argument based on that.  
 
[4] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Rule 403, SCRE.
[5] See Rule 220(c), SCACR ( The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.).