# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

John Ernest Perry, Jr., Respondent.

Appellate Case No. 2021-000947

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from York County
Paul M. Burch, Circuit Court Judge

---

Opinion No. 28167
Heard April 20, 2023 – Filed July 26, 2023

---

## REVERSED

---

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General William M. Blitch, Jr., both of Columbia; and Solicitor Kevin Scott Brackett, of York, for Petitioner.

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Respondent.

---

**CHIEF JUSTICE BEATTY:** A jury convicted the Respondent, John Ernest Perry, Jr., of the attempted murder of a police officer. During deliberations, the jury requested a recharge on intent. Over the defense's objection, the trial court

instructed, "When the intent to do an act that violates the law exists motive becomes immaterial." The court of appeals reversed and remanded for a new trial, concluding the statement improperly instructed the jury on general intent for the crime of attempted murder. While we agree that the trial court erred in giving the jury this recharge, we believe the error was harmless. Accordingly, we reverse the decision of the court of appeals.

## I. FACTS & PROCEDURAL HISTORY

Perry was involved in a shooting with police officers on June 22, 2016 in a residential area of Rock Hill. Patrolling officers observed Perry in a vehicle make an improper turn, without a turn signal, and initiated a traffic stop.[1] Perry fled from officers' blue lights because he had outstanding warrants. He jumped out of the car while still in drive and began to run. Officers pursued Perry over a fence, and he removed a handgun from his waistband. Perry fired in the officers' direction. Later, Perry told Agent Melissa Wallace that the gun fired accidentally when he tried to drop it while jumping over the fence.

Officer Dalton Taylor could clearly see Perry with the help of a street lamp overhead. When Perry pulled out the weapon, Officer Taylor testified that he heard the cocking noise of the pistol. Officer Taylor observed Perry "blade" towards him while firing two shots in his direction. Officer Taylor was not struck by the bullets and, continuing the chase, fired six shots at Perry. Officer Taylor believed that Perry tried to shoot him to escape on foot.[2] There is conflicting evidence whether the first shot was fired in the air or in the bladed position toward Officer Taylor.

Perry escaped on foot and purportedly dropped the weapon in a nearby field.[3] At the time, his identity was unknown, and law enforcement failed to detain a suspect

---

[1] Officer Dalton Taylor testified that Perry turned left into the right-hand lane of the perpendicular road instead of the "utmost lane of travel," i.e., the lane closer to the median.

[2] Following a SLED investigation, Officer Taylor was found to have not committed any wrongdoing during the incident.

[3] Perry initially told officers this is where he ditched the weapon; however, a gun was found during a search of the camper in Fairfield County. Perry later admitted this was the weapon used in the shooting.

that night.  Officers eventually identified Perry from papers found in the abandoned vehicle and from the surveillance video of a local convenience store.

Shortly after his escape, SLED agents apprehended Perry at his camper in Fairfield County.  The agents had an ambulance ready because they believed Perry had been shot, and he was taken to a hospital in the Columbia area for the gunshot wound.  In a statement given to law enforcement in the ambulance, Perry stated[4] the gun "accidentally went off" as he fled, prompting the officers to engage him in gunfire.

A grand jury indicted Perry for attempted murder.  Perry rejected a guilty plea offer with the State for assault and battery of a high and aggravated nature, and the case proceeded to trial.  Officer Taylor testified that he believed Perry fired at him with *the intent to kill*.  Defense counsel asked Agent Melissa Wallace during cross, "If [Perry] had his back turned to the officer and the officer shot, I mean he wouldn't be a threat, though, based on that situation[?]" Agent Wallace responded, "Based on what you said at that point he would be considered *a fleeing felon*."

The State also admitted into evidence testimony from an eyewitness who observed the incident.  The eyewitness studied at Winthrop University and lived in a nearby apartment in 2016.  He testified that, on the night of the pursuit, he looked outside his apartment window and saw a car crash into a fence.  He observed a man flee from officers and fire shots in their direction.  He reiterated that the man fired directly at the officers and not in the air.

At the end of the State's case, the defense made a motion for a directed verdict, which the court denied.  The defense did not put up a case, and Perry did not testify.  The jury began deliberations and requested to have a recharge on attempted murder and assault and battery in the second and third degrees.  The trial court recharged the jury, and deliberations resumed.  Shortly thereafter, the jury sent the court additional questions:  "Is malice only associated to attempted murder or is malice also associated to assault and battery?" and, "What is meant by intent?  That was not charged."  Trial counsel and the court discussed whether or not the court should recharge the jury with the definition of intent from Black's Law Dictionary.  Over defense counsel's objection, the court accordingly recharged the jury:

---

[4] The State admitted into evidence, without objection, Perry's statement through the testimony of SLED Special Agent Melissa Wallace, who accompanied Perry to the hospital.

Intent. The state of mind accompanying an act, especially a forbidden act. While motive is the inducement to do some act, intent is the mental resolution or determination to do it. *When the intent to do an act that violates the law exists motive becomes immaterial.*

*Intent*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

Defense counsel renewed his objection to the last sentence of the recharge, stating, "Also my concern is that attempted murder with case law out there[5] saying that it is a specific intent crime, I mean, in my opinion is what was read was more of a general intent type of thing so that's my—I'm objecting to the charge."

Later, after deliberations began again, the court gave the jury an *Allen*[6] charge. It appears the defense and the State reached a plea deal; however, the jury simultaneously returned with a verdict. The trial court refused to accept the plea deal after the State made clear it was ready to accept the verdict of the jury.

The jury found Perry guilty of attempted murder. After the jury returned its verdict, the defense renewed all of its motions and exceptions and specifically objected again to the recharge. The trial court sentenced Perry to life imprisonment.[7]

The court of appeals reversed Perry's conviction and remanded the matter for retrial. *State v. Perry*, 434 S.C. 92, 862 S.E.2d 451 (Ct. App. 2021). Ruling only on the one sentence of the intent recharge, the court of appeals concluded it gave "essentially a general intent instruction" whereas attempted murder is a specific intent crime. *Id.* at 95, 862 S.E.2d at 452. The court of appeals focused on the immaterial nature of a motive charge and the possibility of jury confusion. *Id.* at 103, 862 S.E.2d at 457 (citing *State v. Washington*, 338 S.C. 392, 400, 526 S.E.2d 709, 713 (2000)). Further, because the trial court gave the statement in response to the jury's question, the court of appeals reasoned that it was unduly emphasized. *Id.*

---

[5] As will be mentioned *infra* note 11, Perry's case was tried after the court of appeals' opinion in *State v. King*, 412 S.C. 403, 772 S.E.2d 189 (Ct. App. 2015), but before this Court's opinion in *State v. King*, 422 S.C. 47, 810 S.E.2d 18 (2017).

[6] *Allen v. United States*, 164 U.S. 492 (1896).

[7] Perry's sentence was enhanced to life under the three strikes rule because he had two prior convictions, one on February 13, 1996, and one on February 29, 1996. S.C. Code Ann. § 17-25-45 (2014 & Supp. 2022). The trial court agreed with the State that these two offenses, though close in time, were separate and distinct.

at 104, 862 S.E.2d at 457 (citing *State v. Blassingame*, 271 S.C. 44, 46–47, 244 S.E.2d 528, 529–30 (1978)).

This Court granted the State's petition for a writ of certiorari to review the decision of the court of appeals.

## II. STANDARD OF REVIEW

"In criminal cases, this Court only reviews errors of law." *State v. Gamble*, 405 S.C. 409, 415, 747 S.E.2d 784, 787 (2013). "An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010). "In reviewing jury charges for error, we must consider the court's jury charge as a whole *in light of the evidence and issues presented at trial*." *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2003) (emphasis added), *quoted in State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011).

## III. DISCUSSION

Challenging the reversal of the court of appeals, the State argues that the trial court gave a correct statement of the law. The State maintains, "If someone has the mental resolution or determination to kill another, then they clearly have the specific intent to kill another person." With that in mind, the State asserts that the phrase "motive becomes immaterial" is correct because, after the jury finds that the requisite intent exists, motive no longer matters. Further, the State insists that motive and intent are distinct legal concepts, which needed to be distinguished. In the alternative, the State contends the charge did not prejudice Perry because it clearly presented evidence that Perry had motive to shoot the officer when fleeing.

Conversely, Perry argues—as he has from the first objection to the proposed statement at trial—that the recharge improperly instructed the jury on a general intent crime when attempted murder requires specific intent. Perry focuses on the unique nature of a recharge and maintains that the jury's questions emphasize its confusion. As to prejudice, Perry makes two arguments. First, he contends that, because he testified his gun fired accidentally, intent was a key issue. Second, Perry argues the jury's question and recharge indicates the jury put substantial focus on intent and the instruction.

Turning to the law on jury instruction challenges, "An erroneous instruction alone is insufficient to warrant this Court's reversal." *State v. Burdette*, 427 S.C. 490, 496, 832 S.E.2d 575, 578 (2019). "Errors, including erroneous jury instructions, are subject to harmless error analysis." *Id*. (internal quotation omitted).

For the reasons explained below, we hold the trial court erred in giving the recharge instruction under the specific circumstances and evidence of the case. However, the error was harmless based on the testimony presented at trial.

## A. The trial court erroneously recharged the jury on intent.

First, the statement, "When the intent to do an act that violates the law exists motive becomes immaterial," is not an incorrect iteration of the law. Motive is "[s]omething, esp. willful desire, that leads one to act." *Motive*, *Black's Law Dictionary* (11th ed. 2019). Most frequently, motive operates as one of the justifications to introduce evidence of crimes or other bad acts as proof of character.[8] Rule 404(b), SCRE. Our courts have recognized that motive is tied to common scheme or plan evidence. *See State v. Cutro*, 365 S.C. 366, 375, 618 S.E.2d 890, 895 (2005) (concluding evidence established both motive and common scheme or plan under Rule 404(b), SCRE); *State v. Bell*, 302 S.C. 18, 29, 393 S.E.2d 364, 370 (1990) (reasoning evidence was admissible to show motive and state of mind under Rule 404(b), SCRE).

However, "motive is not an element of a crime that the prosecution must prove to establish the crime charged, but frequently motive is circumstantial evidence . . . of the intent to commit the crime when intent or state of mind is in issue." *State v. Sweat*, 362 S.C. 117, 124, 606 S.E.2d 508, 512 (Ct. App. 2004) (quoting Danny R. Collins, *South Carolina Evidence* 319 (2d ed. 2000)). Yet, "[s]tate of mind is an issue any time malice or willfulness is an element of the crime." *Id.*

On the other hand, intent, primarily, is "[t]he state of mind accompanying an act, esp. a forbidden act." *Intent*, *Black's Law Dictionary* (11th ed. 2019). We say "primarily" because Black's Law Dictionary states: "While motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates the law exists, motive becomes immaterial. Cf. MOTIVE; SCIENTER." *Id.* As described above, the last sentence of intent's definition creates the issue here.

Despite having confusing definitions, motive and intent are distinct legal concepts. "There is no necessity for confounding the terms 'intent' and 'motive.'"

---

[8] Motive appears in several evidence rules dealing with witnesses and declarants. *See* Rules 608(c), 801(d)(1), 803(3), 804(b)(1), SCRE.

*State v. Coleman*, 20 S.C. 441, 452 (1884). Further, motive and intent are different concepts because they are separately enumerated in Rule 404(b), SCRE.

Although perplexing, we do not interpret the statement as expressly erroneous. In other words, the Black's Law definition is not patent legal error. Motive is inherently different than intent. While intent encompasses one's resolve, commitment, or determination to act, motive represents the reason *why* a person intends an action. Further, the State never has to prove motive to a jury as the element of a crime. The only instance when the State must demonstrate motive is when trying to admit character evidence under Rule 404(b).[9] When the State proves a person intended to act, the law is not concerned with why the person acted. In fact, motive never matters. The statement charged purports to mean, *when the State proves intent, motive does not matter*. Therefore, it is not an incorrect declaration of the law. Yet, that does not end the inquiry.

In addition to correctly stating the law, the trial court has a distinct responsibility to tailor a jury instruction to the facts of the case and the evidence presented at trial.[10] "In reviewing jury charges for error, we must consider the court's jury charge as a whole *in light of the evidence and issues presented at trial*." *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2003) (emphasis added), *quoted in State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011). "Jury instructions by the court of irrelevant and inapplicable principles may be confusing to the jury and can be reversible error." *State v. Washington*, 338 S.C. 392, 400, 526 S.E.2d 709, 713 (2000).

It is well established in South Carolina that when the jury asks for an additional charge, it is enough for the court to recharge only what is necessary to answer the jury's requests. *State v. Anderson*, 322 S.C. 89, 94, 470 S.E.2d 103, 106 (1996) (citing *State v. Barksdale*, 311 S.C. 210, 216, 428 S.E.2d 498, 502 (Ct. App. 1993)); *see also State v. Nichols*, 325 S.C. 111, 118–19, 481 S.E.2d 118, 122 (1997)

---

[9] In that scenario, the State must argue motive before only the trial court judge to admit evidence that would otherwise be inadmissible.

[10] However, a judge must not *comment* on the facts of a case. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law.").

(finding no error in limiting recharge when the jury did not request clarification on that subject matter).

In the instant case, the State had the burden to prove beyond a reasonable doubt that Perry committed attempted murder while firing at the pursuing officers. *See State v. King*, 422 S.C. 47, 56, 810 S.E.2d 18, 22 (2017) ("[W]e hold that a specific intent to kill is an element of attempted murder.").[11]  "[S]pecific intent means that the defendant consciously intended the completion of acts comprising the [attempted] offense."  *State v. Sutton*, 340 S.C. 393, 397, 532 S.E.2d 283, 285 (2000), *quoted in King*, 422 S.C. at 56, 810 S.E.2d at 22.

Whereas general intent is "the state of mind required for the commission of certain common law crimes not requiring specific intent and it usually takes the form of recklessness . . . or negligence."  *State v. Kinard*, 373 S.C. 500, 504, 646 S.E.2d 168, 169 (2007) (internal quotations omitted), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 832 S.E.2d 575 (2019).  "[P]rosecutions are generally not maintainable for attempts to commit general intent crimes, such as criminal recklessness, attempted felony murder, or attempted manslaughter."  *King*, 422 S.C. at 56, 810 S.E.2d at 23 (quoting 22 C.J.S. *Criminal Law:  Substantive Principles* § 156, at 221-22 (2016)).

Thus, the trial judge had an obligation to instruct the jury on specific intent. Perry, from the time the instruction was proposed, has objected to the final statement of the recharge because it confuses general and specific intent, the requisite intent of attempted murder.  In *King*, this Court noted, "[T]he phrase 'with intent to kill' in section 16-3-29 does not identify what level of intent is required."  422 S.C. at 55, 810 S.E.2d at 22.  Because "with intent to kill" is not precise in what level of intent is required, we believe it could create confusion for the jury.

Moreover, the jury heard evidence sufficient to find general intent to commit a crime.  Agent Wallace testified that, at the point of fleeing from pursuing officers, Perry's actions would make him a fleeing felon with a deadly weapon. Consequently, the jury could find the existence of general intent to violate the law based on this testimony alone.

---

[11] Perry's case was tried one month before this Court issued *State v. King* in 2017 but after the court of appeals issued its opinion coming to the same conclusion in 2015.

Therefore, the trial court erred under the circumstances of the case in instructing the jury, "When the intent to do an act that violates the law exists motive becomes immaterial." Because the State charged Perry with attempted murder, the trial court should have been more precise in defining specific intent based on the evidence presented at trial.

## B. The trial court's error was harmless.

"To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010). "When considering whether an error with respect to a jury instruction was harmless, we must determine beyond a reasonable doubt that the error complained of did not contribute to the verdict." *State v. Burdette*, 427 S.C. 490, 496, 832 S.E.2d 575, 578 (2019) (internal quotations omitted). "[W]e are required to review the trial court's charge to the jury in its entirety." *Id.* at 498, 832 S.E.2d at 580.

In *Burdette*, we concluded an erroneous instruction on inferred malice was *not* harmless. *Id.* When instructing the jury on the lesser-included offense of voluntary manslaughter in a murder trial, the court failed to explain to the jury that malice is not an element of voluntary manslaughter. *Id.* at 499–500, 832 S.E.2d at 580–81. There, we concluded the jury had an incorrect impression malice was an element of voluntary manslaughter. *Id.* at 501, 832 S.E.2d at 581. The jury asked for clarification of the charges, and the trial court repeated the same. *Id.* Importantly, the State's and Burdette's theories of the case conflicted—Burdette claimed to have fatally shot the victim accidentally. *Id.* at 493, 832 S.E.2d at 577.

Here, unlike in *Burdette*, we conclude that the trial court's error was harmless. Importantly, a disinterested eyewitness[12] corroborated Officer Taylor's testimony that Perry fired directly at him, as opposed to up in the air. Evidence of specific intent was clear. The eyewitness observed the events from the upstairs window of a nearby apartment building. In his testimony, the eyewitness observed Perry fire two—maybe three—gunshots in the officers' direction while fleeing. No less than six times did the eyewitness indicate he observed Perry fire *at* the officers. Therefore, we cannot say beyond a reasonable doubt that the jury found only general intent to commit a crime.

---

[12] The eyewitness was sequestered before his testimony.

The jury needed an *Allen* charge during deliberations after the recharge. However, we cannot conclude the sole explanation for this was confusion on intent. Similarly, although we must infer the jury gave special attention to the recharge, see *Blassingame*, 271 S.C. at 46–47, 244 S.E.2d at 529–30, we still must review the entirety of the record to determine if the erroneous charge was harmful. For those reasons, we hold the error was harmless beyond a reasonable doubt.

## IV.  CONCLUSION

The trial court erred in recharging the jury, "[w]hen the intent to do an act that violates the law exists, motive becomes immaterial," because it, effectively, defines the required mental state of attempted murder as general intent. Trial courts must be more explicit in their charges that specific intent must be proven. However, because the State presented additional testimony of a disinterested eyewitness, we conclude the error was harmless.

**REVERSED.**

**KITTREDGE, FEW, JAMES, JJ., and Acting Justice James E. Lockemy, concur.**