## 20211

The STATE, Respondent, v. Johnnie McDOWELL, Appellant.

(224 S. E. (2d) 889)

*Messrs. Harry Pavilack* and *Paul Joseph,* of Myrtle Beach, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joseph R. Barker* and *Richard P. Wilson, Asst. Attys. Gen.,* of Columbia, and *J. M. Long, Jr., Sol.,* of Conway, *for Respondent.*

May 4, 1976.

LEWIS, Chief Justice:

Appellant, Johnnie McDowell, was convicted of murder in the commission of armed robbery and sentenced to death under Section 16-52 of the 1962 Code of Laws, as amended. He appeals, challenging his conviction and sentence because of alleged errors in the trial, and the alleged unconstitutionality of the death penalty as cruel and unusual punishment under the State and Federal Constitutions. We affirm.

Appellant was convicted under an indictment charging him with the murder of William F. Vereen and Roy Hamilton, who were residents of the State of Florida and visiting in the State of South Carolina at the time. The State relied upon circumstantial evidence, incriminating statements made by appellant to the officers, and admissions to a cellmate.

The victims, Mr. Vereen and Mr. Hamilton, left their homes in Florida on February 4, 1975 to visit relatives in Myrtle Beach, South Carolina. They carried on their persons money in excess of $1,200.00, mostly in bills of $100.00

denomination. While the exact time of their arrival in South Carolina on February 4th is not shown, witnesses testified that appellant, carrying his brother-in-law's Remington 12-gauge automatic shotgun, which he had tried to sell for $100.00, was seen leaving a store, near Conway, South Carolina, with the two victims at approximately 8:30 p. m. on that date. Thereafter, between 8:30 and 9:00 p. m., the victim Vereen entered the office of the Conway Motor Inn and registered for two persons, paying for a week in advance with a $100.00 bill taken from an envelope containing other bills of the same denomination. There were two other occupants who remained in Vereen's car, but the persons on duty at the Motor Inn could not identify them because the rain at the time obscured their view. The motel room assigned to the victim Vereen and another person was never occupied.

The appearance of Vereen at the motel to register was the last time either of the victims were seen alive. The next day (February 5th), about 4:30 p. m., Vereen's car was found near a bridge on a dirt road in a swamp area near Conway. The inside of the car had been burned and was still smoldering. The officer who discovered the car found bloodstains, shotgun shells, and several coins nearby. Vereen's body was recovered from adjacent swamp waters shortly after the car was found and Hamilton's body was found about two (2) days later, on February 7, 1975, in the same swamp waters after rescue teams had searched the area for two days.

An autopsy of the bodies showed that both victims died of shotgun wounds to the chest, Vereen having been shot twice and Hamilton once. The examining physician was unable to determine, scientifically, the time of death; but fixed it at approximately 4:00 p. m. on February 5, 1975, based upon the history of the case. His estimate, however, of the time of death was of doubtful value due to the qualifications placed thereon by him.

The murder weapon was never found, but a firearms expert testified that the breech marks on the shells, found at the automobile, matched those on a shell recently fired from the shotgun which appellant had in his possession when he left the store near Conway on the night of February 4th in the company of the victims. The expert testified that the shells were fired from the same gun.

About 11:30 p. m., on February 4th, 1975, after appellant and the victims left the store near Conway together, appellant was seen alone in the Army-Navy Club in Myrtle Beach. He had a considerable amount of money with him at that time. After about an hour there, he went to the Oasis Club in Myrtle Beach where he spent in excess of $300.00 over a period of approximately three (3) hours and displayed other money, including at least three (3) one hundred ($100.00) dollar bills. When he left the Oasis Club, he was taken by a taxi cab to the home of one of the female entertainers and paid the cab driver with a one hundred ($100.00) dollar bill.

One Jesse Cooley, a cellmate, testified that appellant told him during a conversation that he and a partner had killed two men from Florida with a shotgun and had taken over $1,100.00 from their bodies.

Appellant testified at the trial. His defense was essentially an alibi. He at all times denied the charges, but his testimony at the trial conflicted with some of the oral statements made to the police shortly after his arrest.

■ Certain exceptions charge that the trial judge erred in failing to grant appellant's timely motion for a directed verdict of not guilty because of the alleged insufficiency of the evidence to sustain the charges of murder. We have not attempted to set forth all of the testimony, but only the main facts upon which the State relied. After a careful consideration of the entire record, we are convinced that the evidence and the reasonable inferences to be drawn

therefrom sustain the conclusion reached by the jury that appellant committed the murders as charged.

Other exceptions allege that error was committed in permitting a jeweler to testify as to a test made with the watch of the victim Hamilton in order to determine how long it would run under water.

The time of the murder was a crucial issue. The State's theory was that appellant committed the crime at some time between 8:30 p. m. on February 4, 1975, when the victims were last seen alive and in the company of appellant, and 11:30 p. m. when appellant was seen alone at the Army-Navy Club in Myrtle Beach. Appellant's contention was that the murder took place on February 5th, 1975, when he was able to produce alibi witnesses.

The State used the watch to help establish the time of death. When the body of the victim Hamilton was removed from the water, the officers noticed that his wrist watch, which was not waterproof, had stopped at 10:30. However, approximately fifteen (15) minutes after the watch was removed from the water it began to run again continuing for twelve (12) minutes before stopping at 10:42. Upon such observation of the watch, the officers carried it to a professional jeweler and watch repairman who was permitted to testify, over objection, that he restored it to good operating condition and then immersed it in water so as to determine how long it would take the watch to stop under such conditions. The jeweler testified that the watch stopped running four (4) minutes and forty (40) seconds after it was immersed in water. The State sought to draw the inference that it took about the same length of time for the watch to stop after the victim's body was thrown into the water, leading to the conclusion that the murder was committed within the time period advanced by the State.

The jeweler testified that he had never before made a similar test or experiment. Appellant objected to the testi-

mony of the jeweler relative to the test made with the watch because of the jeweler's lack of previous experience in making such tests. The trial judge properly overruled the objection. The jeweler did not give an opinion but simply testified as to the manner and results of the test. The jurors were left to draw their own inferences. Other than the testimony of the jeweler that he restored the watch to good running condition, about which he was clearly qualified to testify as an experienced watch repairman, the actual test required no unusual skill and might have been performed without the aid of the jeweler. The jeweler was competent to testify and the objection of appellant was properly overruled.

The next exception concerns the admissibility of testimony referring to a lie detector or polygraph test. The State presented a cellmate of appellant as a witness. This witness related a purported conversation between him and appellant and, over objection, that appellant told him of an offer by the officers to give him a lie detector test. This testimony was as follows:

"A. He told me that they had offered him to go to Columbia and take a lie detector test, and he told me if he was able to beat the lie detector test—

. . .

"Q. . . . Just tell me anything he asked you about that test.

"A. He asked me if I knew any way to beat the test and he asked me if he could get some dope in there, smuggled in there to calm his nerves while he was taking the test if they would be able to tell he was lying, and I told him I didn't know. I didn't know anything about it."

Appellant subsequently testified; and, on direct examination, he denied that he had ever mentioned a lie detector test to the cellmate. The Solicitor, without objection, asked appellant on cross-examination about the same matter and received a denial that the conversation had ever occurred.

Appellant contends that the foregoing references to a lie detector test were prejudicial and requires reversal under *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669.

Appellant contends that the foregoing references to a lie detector test left the inference that he had refused to take the test, or that he had taken and failed it. He argues that such testimony was prejudicial and requires reversal under *State v. Britt, supra.*

In *Britt,* the court reversed a death sentence because evidence of a defendant's refusal to take a polygraph test was allowed. There, an officer was permitted to testify that the defendant was "given the opportunity" to take the test "but refused" to do so.

The facts in this case clearly distinguish it from *Britt.* Here there was no direct testimony that appellant refused to take a polygraph test.

As a general rule, any guilty act, conduct, or statements on the part of the accused are admissible as some evidence of consciousness of guilt. It was held in *Town of Hartsville v. Munger,* 93 S. C. 527, 77 S. E. 219, that "false and conflicting statements and attempts to run away have always been regarded as some evidence of guilty knowledge and intent."

Appellant, according to the witness, admitted shooting and robbing the victims and sought information as to the possible effect certain actions would have on the results of a proffered polygraph test, if taken. The statement of appellant was not that he had refused the offer of a polygraph test, but, rather, whether he could "beat the test" and, inferentially at least, use the results to hide his guilt. The statement allegedly made was to avoid detection of guilt and, as such, was properly admitted into evidence. Certainly, the voluntary statements of appellant, concerning ways in which detection of his guilt might be avoided *if* he subjected himself to the polygraph test were no more damaging or

inadmissible than the remainder of his statement, unobjected to, in which he allegedly admitted the commission of the crime.

Exception is next taken to the refusal by the court to permit appellant's counsel to comment, in argument to the jury, on the propriety of an officer questioning appellant in the absence of counsel. Counsel was appointed on February 7, 1975 to represent appellant. Thereafter, on February 10, 1975, appellant was questioned without the presence of his attorney. Counsel attempted to argue to the jury that it was improper for the officer to question appellant without his counsel being present. Upon objection, the court refused to permit the argument, ruling that the mere absence of his counsel did not render appellant's statement inadmissible, but that the test was whether appellant had knowingly and voluntarily waived his right to have his attorney present. The court had previously held that such voluntary waiver had been made.

The only effect of the ruling of the court was to prohibit an argument to the jury that under any and all circumstances a defendant cannot be questioned without the presence of his counsel. This was proper and did not preclude an argument to the jury that under the particular facts there was no waiver of the right to have counsel present. We fail to find prejudice to appellant from the foregoing ruling.

Finally, it is argued that the imposition of the death penalty constitutes cruel and unusual punishment under the Federal and State Constitutions. We have consistently upheld the constitutionality of capital punishment and recently upheld the constitutionality of Section 16-52 of the 1962 Code of Laws, under which the death penalty was imposed in this case. *State v. Allen*, S. C., 222 S. E. (2d) 287. We are not persuaded that our prior decisions upholding the constitutionality of the death penalty are unsound.

Since this is a death case, we have carefully examined the record to determine whether there are any errors affecting the rights of appellant, even though not made a ground of appeal or argued; but find none. Since the evidence sustains the verdict and we find no errors of law, the judgment is AFFIRMED.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.