[Cite as *State v. Austin*, 2017-Ohio-7845.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DANIEL D. AUSTIN

    Appellant

C.A. No.    28199

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2015 03 0889

DECISION AND JOURNAL ENTRY

Dated: September 27, 2017

CARR, Judge.

{¶1}    Defendant-Appellant, Daniel Austin, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2}    In January 2015, three women came forward and accused Austin of having sexually assaulted them in their youth. Relevant to this appeal, Austin's half-sister, K.R., accused him of sexually assaulting her when she was between the ages of five and ten. Meanwhile, his cousin, L.B., accused him of sexually assaulting her when she was between the ages of five and thirteen. It is undisputed that, at the time Austin allegedly committed the sexual assaults, he was between the ages of ten and nineteen.

{¶3}    A grand jury indicted Austin on thirty-five counts: (1) ten counts of rape and eight counts of gross sexual imposition ("GSI") that pertained to L.B.; (2) six counts of rape and six counts of GSI that pertained to K.R.; and (3) four counts of rape and one count of GSI that

pertained to a third accuser. Each count of rape or GSI spanned a designated time period. The counts involving L.B. spanned from December 1999 until December 2008. The counts involving K.R. spanned from January 2003 until January 2009. Finally, the counts involving the third accuser spanned from July 2003 until July 2007.

{¶4} Austin moved to dismiss the indictment, in whole or part, on the basis of pre-indictment delay. He further claimed that subjecting him to prosecution as an adult for crimes he allegedly committed at such a young age offended the Due Process Clause. The State filed a brief in opposition to his motion, and the trial court held a hearing. Following the hearing, the court granted Austin's motion in part and dismissed four of the rape counts and three of the GSI counts involving L.B. The remaining twenty-eight counts remained for trial, but, at the close of its case-in-chief, the State dismissed an additional eight counts as a result of the evidence presented at trial and successful amendments to the dates in the indictment. Specifically, the State dismissed one of the rape counts pertaining to K.R., three of the rape counts pertaining to L.B., three of the rape counts pertaining to the third accuser, and the GSI count pertaining to the third accuser. The jury heard the remaining twenty counts.

{¶5} The jury found Austin not guilty of the sole remaining rape count involving the third accuser and one of the GSI counts involving K.R. The jury found Austin guilty of his other eighteen counts, and the court sentenced him on each count. The court imposed a total sentence of life in prison with parole eligibility after thirty-five years.

{¶6} Austin now appeals from his convictions and raises seven assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

R.C. 2152.02(C)(3) AND R.C. 2152.12(J) ARE UNCONSTITUTIONAL AS APPLIED TO DANIEL AUSTIN AS TO COUNTS 1, 6, 12, 15 WHEN THE TRIAL COURT PREVIOUSLY RULED THAT TO THE EXTENT THAT THEY REQUIRE MR. AUSTIN TO BE TREATED AND PUNISHED AS AN ADULT FOR CRIMES THAT OCCURRED WHEN HE WAS UNDER 14 YEARS OLD AND INELIGIBLE FOR ADULT PROSECUTION VIOLATING HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL AND SENTENCING.

**{¶7}** In his first assignment of error, Austin argues that R.C. 2152.02(C)(3) and 2152.12(J) are unconstitutional as applied to him with respect to three of his convictions.[1] For the reasons that follow, we reject his argument as to two of those convictions.

**{¶8}** "[E]nactments of the General Assembly enjoy a strong presumption of constitutionality. Thus, a statute will be upheld unless proven beyond a reasonable doubt to be unconstitutional." (Internal citations omitted.) *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, ¶ 7. "A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37. "In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted * * * [is] unconstitutional.'" (Bracketed alteration sic.) *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011 (1992) (Scalia, J., dissenting). It is the challenger's burden to "'present[] clear and convincing evidence of a presently existing set of facts that make the statute[] unconstitutional and void when applied to those facts.'" *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, ¶ 181, quoting *Harrold* at ¶ 38.

---

[1] Austin's quoted assignment of error and the body of his brief attack four of his convictions (i.e., count 1 and renumbered counts 6, 12, and 15). In his reply brief, however, he concedes that renumbered count 12 is not at issue. Accordingly, we need not address that conviction.

{¶9}   There is no dispute that Austin was twenty-five years old when arrested and indicted.   There also is no dispute that his indictment charged him with conduct he allegedly committed when he was between the ages of ten and nineteen.   R.C. 2152.12(J) provides that

> [i]f a person under eighteen years of age allegedly commits an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, the juvenile court does not have jurisdiction to hear or determine any portion of the case charging the person with committing that act. In those circumstances, * * * the case charging the person with committing the act shall be a criminal prosecution commenced and heard in the appropriate court having jurisdiction of the offense as if the person had been eighteen years of age or older when the person committed the act.

Likewise, the Revised Code provides that "[a]ny person who, while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age is not a child in relation to that act."  R.C. 2152.02(C)(3).

{¶10}  Before trial, Austin filed a motion to dismiss his indictment, in whole or part, on the basis of pre-indictment delay.  He also argued that prosecuting him as an adult for crimes he allegedly committed when he was less than fourteen years of age "raise[d] a due process fundamental fairness issue" because he would not have been subject to bindover at that age.  *See* R.C. 2152.12(B)(1).  While the trial court rejected his pre-indictment delay argument, the court agreed that it would be "fundamentally unfair and an arbitrary and unreasonable abridgment of his due process rights" to apply R.C. 2152.02(C)(3) and 2152.12(J) to him for conduct he allegedly committed before turning fourteen.  The court, therefore, dismissed seven counts in the indictment, all of which were alleged to have occurred between December 21, 1999, and December 20, 2002.  The court held in abeyance its ruling on several additional counts because it could not determine, without hearing the evidence at trial, whether Austin was under fourteen

when those offenses allegedly occurred. The trial court never revisited its ruling, and the jury ultimately found Austin guilty of the three counts at issue in this assignment of error.

{¶11} Austin argues that R.C. 2152.02(C)(3) and 2152.12(J) are unconstitutional as applied to him with respect to his three counts because the evidence does not support the conclusion that he was at least fourteen when he committed them. Count 1 was for rape, concerned K.R., and was alleged to have occurred between January 12, 2003, and January 11, 2004. Renumbered count 6 was for GSI, concerned K.R., and was alleged to have occurred during that same time period. Renumbered count 15 was for GSI, concerned L.B., and was alleged to have occurred between December 21, 2002, and December 20, 2003. Austin turned fourteen on October 14, 2003. Accordingly, with respect to the counts involving K.R., Austin was fourteen for almost three months of the indictment period (i.e., between October 14, 2003, and January 11, 2004). With respect to the count involving L.B, he was fourteen for just over two months of the indictment period (i.e., between October 14, 2003, and December 20, 2003).

{¶12} Notably, this Court need not address the trial court's ultimate conclusion that it would be "fundamentally unfair and an arbitrary and unreasonable abridgment of [Austin's] due process rights" to apply R.C. 2152.02(C)(3) and 2152.12(J) to him for conduct he allegedly committed before turning fourteen. The trial court ruled in Austin's favor on that issue, and the State has not appealed from the trial court's ruling. Austin's statutory argument hinges entirely upon his assertion that there was no proof he committed count 1, renumbered count 6, and renumbered count 15 when he was at least fourteen. Accordingly, this Court will assume for purposes of its analysis that the trial court's underlying ruling was correct and limit its review to the issue of whether Austin was at least fourteen when he committed the foregoing offenses.

**K.R.: Count 1 and Renumbered Count 6**

{¶13} K.R. testified that she was born in January 1998 and is Austin's half-sibling. She stated that she was five years old when she started kindergarten and that Austin began raping her during that school year. The first rape occurred in the midst of a game that Austin invented, which he called "the wormy game." K.R. explained that Austin had them remove their clothes, roll up in blankets, and try to get into each other's blankets. During the game, K.R. stated that "you would touch the other person on their penis or their vagina and then it turned into sex after that." She testified that, after the first time, the game "seemed to happen almost on a daily basis" through kindergarten and first grade. She stated that, while in first grade, the game stopped and "it just went right into the sex." She estimated that Austin raped her "three to four times a week" between kindergarten and third grade.

{¶14} When Austin turned fourteen, K.R. was approximately five years and nine months old. The indictment period encapsulated in count 1 and renumbered count 6 ended when she turned six years old in January 2004. K.R. specifically testified that she was five years old when she started kindergarten and that the sexual encounters with Austin began in kindergarten and continued until third grade. She also specified that the encounters occurred several times each week. K.R. described her sexual encounters with Austin as encompassing both genital touching and vaginal intercourse. Accordingly, with regard to count 1 and renumbered count 6, there was evidence that Austin committed at least one rape and one instance of GSI against K.R. between his fourteenth birthday (October 14, 2003) and January 11, 2004. He has not, therefore, demonstrated that R.C. 2152.02(C)(3) and 2152.12(J) are unconstitutional as applied to him with respect to those two counts. *See Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, at ¶ 181, quoting

*Harrold*, 107 Ohio St.3d 44, 2005-Ohio-5334, at ¶ 38. Austin's first assignment of error is overruled insofar as it pertains to K.R.

**L.B.: Renumbered Count 15**

{¶15} With respect to renumbered count 15, the State concedes that it failed to present evidence that Austin committed GSI against L.B. between October 14, 2003, and December 20, 2003. Accordingly, this Court accepts the State's concession and vacates Austin's conviction on renumbered count 15. Austin's first assignment of error is sustained insofar as it concerns L.B.

<u>**ASSIGNMENT OF ERROR II**</u>

THE ADMISSION OF POLYGRAPH TESTIMONY VIOLATED DANIEL AUSTIN'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND HIS 5TH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION.

{¶16} In his second assignment of error, Austin argues that the trial court erred when it admitted testimony, offered to prove consciousness of guilt, that he asked his half-brother to assume his identity and take a polygraph examination in his stead. We do not agree that the trial court erred in its evidentiary ruling.

{¶17} The decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *State v. Aguirre*, 9th Dist. Lorain No. 13CA010418, 2015-Ohio-922, ¶ 6. An abuse of discretion indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶18}** As a general rule, courts heavily guard against the admission of evidence pertaining to polygraph examinations. *See State v. Souel*, 53 Ohio St.2d 123 (1978). The law favors neither "the admissibility of test results [nor] statements regarding an individual's willingness or lack of willingness to submit to a test." *State v. Byrd*, 9th Dist. Lorain No. 03CA008230, 2003-Ohio-7168, ¶ 33. *Accord State v. Key*, 2d Dist. Montgomery No. 27199, 2017-Ohio-4098, ¶ 6-12; *State v. Gilliam*, 4th Dist. Pickaway Nos. 15CA19, 15CA20, 2016-Ohio-2950, ¶ 34. This is so because polygraph tests "have not attained scientific or judicial acceptance as an accurate and reliable means of ascertaining truth or deception." *State v. Rowe*, 68 Ohio App.3d 595, 609 (10th Dist.1990). Evidence that an accused expressed his unwillingness to submit to a polygraph test is inexorably linked to the supposition that the test, had it been performed, would have accurately measured the truthfulness of his statements. *See State v. Hegel*, 9 Ohio App.2d 12, 14 (2d Dist.1964), quoting *State v. Mottram*, 158 Me. 325, 330 (1962). The State, therefore, generally may not tender such evidence for the purpose of establishing guilt. *See Rowe* at 609. *But see Souel* at syllabus (polygraph results admissible in certain circumstances if offered for purposes of corroboration or impeachment). In certain instances, however, the State may offer statements made or actions taken by an accused in connection with a polygraph test if the statements or actions *themselves* demonstrate a consciousness of guilt.

**{¶19}** "[A]n accused's 'flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 167, quoting *State v. Eaton*, 19 Ohio St.2d 145, 160 (1969). Likewise, "[p]rosecutors may elicit testimony on direct examination that the defendant asked a witness 'to fabricate an alibi for him,'

*Commonwealth v. Young*, 561 Pa. 34, 61-62, (2000), because such evidence 'strongly indicates consciousness of guilt,' *State v. Campbell*, 69 Ohio St.3d 38, 47 (1994)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 135. *See also United States v. Poulsen*, 655 F.3d 492, 508-509 (6th Cir.2011) (spoliation evidence, including an attempt to bribe or tamper with a witness, admissible to show consciousness of guilt). In the same vein, numerous courts have held that the State may offer evidence of an accused's attempt to "beat" a polygraph examination as proof of his consciousness of guilt. *See, e.g., People v. Samuels*, 36 Cal.4th 96, 128 (2005) (witness permitted to testify about "statements defendant made to her about how to 'beat' a polygraph test"); *People v. Enfield*, Mich.Ct.App. No. 224369, 2002 WL 31160299, *2-3 (Sept. 27, 2002) (evidence that defendant asked a "jailhouse lawyer" how to "'beat' a polygraph test" admissible to show consciousness of guilt); *United States v. Bellomo*, 944 F.Supp. 1160, 1167 (S.D.N.Y.1996) (evidence that accused tried to procure and probably ingested lithium in attempt to deceive the polygraph examiners and influence his results admissible to show consciousness of guilt); *State v. McDowell*, 266 S.C. 508, 515-516 (1976) (voluntary statements of defendant, "concerning ways in which detection of his guilt might be avoided [i]f he subjected himself to the polygraph test," admissible to show consciousness of guilt). "A defendant's statements, 'like other conduct following the completion of a crime, may be relevant evidence of consciousness of guilt.'" *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 115, quoting *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, ¶ 72.

{¶20} During its case-in-chief, the State introduced the testimony of Austin's half-brother. He testified that he had a close relationship with Austin and, at some point in 2015, spoke with Austin on the phone. During that phone conversation, Austin asked him to take a polygraph test for him. Austin's half-brother specified that Austin proposed a meeting between

the two so that he (Austin) could provide him with his (Austin's) identification to take with him to the test. He testified that he initially agreed to take the test for Austin, but changed his mind shortly thereafter and let Austin know that he would not be willing to take the test. According to Austin's half-brother, he could not tell if Austin was being sarcastic or joking during their discussion about the polygraph.

{¶21} Before allowing Austin's half-brother to testify, the trial court spoke with him outside the presence of the jury. The court advised him that, at no point during his testimony, would he be permitted to volunteer information about any polygraph tests Austin might have taken in the past, whether any polygraph test was actually completed, or the results of any polygraph testing. With those restrictions in mind, the court overruled Austin's objection to the testimony. The court determined that the testimony was not unduly prejudicial and, if believed, could indicate consciousness of guilt. The court later instructed the jury:

> [T]estimony has been admitted that [Austin] asked another individual to take a polygraph test for him. You are instructed that such conduct alone does not raise a presumption of guilt, but it may tend to indicate [Austin's] consciousness of guilt. If you find that the facts do not support [Austin] attempted to cause another individual to take a polygraph test for him, or if you find that some other motivation prompted [his] request, or if you are unable to decide [his] motivation, then you should not consider the evidence for any purpose.
>
> However, if you find that the facts support that [he] did attempt to cause another individual to take a polygraph test for him and if you decide that [he] was motivated by a consciousness of guilt, you may, but are not required to, consider this evidence in deciding whether [he] is guilty of the crime with which he is charged. You alone will decide what weight, if any, to give to this evidence.

Accordingly, in its instruction, the court "emphasized repeatedly the jury's role as factfinder." *State v. Nichols*, 9th Dist. Summit No. 24900, 2010-Ohio-5737, ¶ 12.

{¶22} Having reviewed the record, we cannot conclude that the trial court abused its discretion when it allowed the State to present the testimony of Austin's half-brother in its case-

in-chief. There was no evidence that Austin ever took a polygraph test or even that he was asked to do so. The evidence was that Austin voluntarily broached the subject of a polygraph test with his half-brother because he wanted his half-brother to impersonate him and take the test on his behalf. Austin's statements do not simply reflect an unwillingness to submit to a polygraph. Rather, if believed, they tend to show an attempt to deceive law enforcement and impede an investigation through purposeful manipulation. While the law generally disfavors testimony pertaining to polygraphs, the particular facts and circumstances in this case are in accord with the cases outlined above where courts have admitted evidence of an accused's attempt to "beat" a polygraph examination as bearing upon consciousness of guilt. *See, e.g., Samuels*, 36 Cal.4th at 128; *Enfield*, 2002 WL 31160299, at *2-3; *Bellomo*, 944 F.Supp. at 1167; *McDowell*, 266 S.C. at 515-516. The trial court, in its broad discretion, could have determined that Austin's statements were admissible to show consciousness of guilt and were not more prejudicial than probative. *See Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, at ¶ 115, quoting *Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, at ¶ 72. As such, Austin's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

DANIEL AUSTIN'S RIGHT TO DUE PROCESS WAS VIOLATED AS A RESULT OF PROSECUTORIAL MISCONDUCT.

{¶23} In his third assignment of error, Austin argues that prosecutorial misconduct deprived him of a fair trial. We disagree.

{¶24} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No.

03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *State v. Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶25} Austin argues that the prosecutor engaged in misconduct when he presented the testimony of Austin's half-brother, who testified that Austin asked him to take a polygraph test on his behalf. He further argues that the prosecutor engaged in misconduct when he repeatedly commented on that same testimony during closing argument.

{¶26} This Court has already determined that the testimony of Austin's half-brother was admissible at trial. Because that testimony was admissible, the prosecutor did not engage in misconduct when he presented it or when he later referenced it in closing argument. As Austin has not pointed this Court to any instances of misconduct on the part of the prosecutor, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

> THERE WAS INSUFFICIENT EVIDENCE FOR THE JURY TO FIND IN AMENDED COUNT 13 THAT THE DEFENDANT CAUSED SERIOUS PHYSICAL HARM IN THE COMMISSION OF THE OFFENSE OF RAPE.

{¶27} In his fourth assignment of error, Austin argues that one of the findings the jury made with respect to one of his rape convictions is based on insufficient evidence. Specifically, he argues there was no evidence that he caused L.B., the victim in that count, any serious physical harm. Upon review, we reject his assignment of error.

{¶28} The rape statute prohibits any person from "engag[ing] in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). Before the enactment of Am.Sub.S.B. No. 260 in January 2007, any offender who violated R.C. 2907.02(A)(1)(b) and, in doing so, "purposely compel[led] the victim to submit by force or threat of force" automatically received a life sentence. Former R.C. 2907.02(B). After the bill's enactment, an offender who caused his youthful victim serious physical harm during the commission of a rape could be sentenced to either life without parole, *see* R.C. 2907.02(B), or an indefinite sentence of 25 years to life,[2] *see* R.C. 2971.03(B)(1)(c). An offender who did not cause his youthful victim serious physical harm could be sentenced to an indefinite term of ten years to life so long as his victim was at least ten years of age. *See* R.C. 2971.03(B)(1)(a), (b). Meanwhile, the bill exempted offenders who were under the age of sixteen at the time of their offense from any of the foregoing penalties so long as they satisfied certain other criteria, including that they did not subject their victims to any serious physical harm. *See* R.C. 2907.02(B). The bill directed trial courts to sentence those exempted offenders "as otherwise provided in the rape statute." Bill Analysis, 126th Leg., 2007 Am.Sub.S.B. No. 260. *See also* R.C. 2907.02(B) (exempted offenders shall not be sentenced under R.C. 2971.03, but instead "as otherwise provided in this division").

{¶29} At issue in this assignment of error is renumbered count 13. That count charged Austin with raping L.B., in violation of R.C. 2907.02(A)(1)(b), between December 21, 2004, and December 20, 2007. The jury found Austin guilty of renumbered count 13 and further found that

---

[2] The indefinite sentence option was not available if the offender also was convicted of a sexually violent predator specification.

he (1) was between the ages of fourteen and seventeen when he committed the offense, (2) used force when he engaged in sexual conduct with L.B., and (3) caused her serious physical harm. Austin argues that the jury's third finding is based on insufficient evidence because the State failed to set forth any evidence of serious physical harm.

{¶30}  It is well settled that, "[t]o demonstrate reversible error, an aggrieved party must demonstrate both error and resulting prejudice." *Princess Kim, L.L.C. v. U.S. Bank, N.A.*, 9th Dist. Summit No. 27401, 2015-Ohio-4472, ¶ 18.  With respect to renumbered count 13, the trial court sentenced Austin to life in prison with parole eligibility after ten years.  Accordingly, the court did not impose one of the sentences authorized upon a finding of serious physical harm. *See* R.C. 2907.02(B) (authorizing sentence of life without parole); R.C. 2971.03(B)(1)(c) (authorizing an indefinite sentence of 25 years to life).  Austin concedes that, were this Court to sustain his assignment of error, that conclusion "[would] not alter his sentence."  Further, Austin has not demonstrated any particular way in which the jury's finding could result in actual prejudice to him.  He argues that this Court should nonetheless address his argument because his "conviction should accurately reflect the evidence presented."  This Court will not, however, reverse a judgment in the absence of resulting prejudice. *Princess Kim, L.L.C.* at ¶ 18.  Even assuming that the jury erred in finding serious physical harm to L.B., "such error would be harmless." *State v. Walton*, 9th Dist. Medina No. 3199-M, 2002 WL 86434, *2 (Jan. 23, 2002). Because the trial court did not rely on the jury's finding when it fashioned Austin's sentence on renumbered count 13, his argument lacks merit.  His fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND/OR PLAIN ERROR IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION WHEN IT FAILED TO MERGE THE SENTENCES FOR RAPE AND GROSS GROSS (sic) SEXUAL IMPOSITION.

{¶31} In his fifth assignment of error, Austin argues that the trial court committed plain error when it failed to merge as allied offenses of similar import (1) five counts of rape with five counts of GSI, all of which involved K.R., and (2) three counts of rape with four counts of GSI, [3] all of which involved L.B.

{¶32} In addressing Austin's assignment of error, the State has conceded that seven of his GSI convictions must be vacated due to lack of sufficient evidence. Those convictions are: (1) renumbered count 8, a GSI count pertaining to K.R.; (2) renumbered count 9, a GSI count pertaining to K.R.; (3) renumbered count 10, a GSI count pertaining to K.R.; (4) renumbered count 15, a GSI count pertaining to L.B.; (5) renumbered count 16, a GSI count pertaining to L.B.; (6) renumbered count 18, a GSI count pertaining to L.B.; and (7) renumbered count 19, a GSI count pertaining to L.B. This Court accepts the State's concession and vacates Austin's convictions on the seven foregoing counts. Accordingly, we only consider whether his two remaining GSI counts, renumbered counts 6 and 7, should have merged with the two rape counts stemming from the same time frames. Because both remaining GSI counts pertain to K.R., this Court will not discuss the evidence the State presented with regard to L.B.

{¶33} The failure to timely assert an allied offenses objection limits appellate review of that issue to plain error. *State v. Dodson*, 9th Dist. Medina No. 16CA0020-M, 2017-Ohio-350, ¶

---

[3] Austin concedes that his conviction on a fifth GSI count for conduct he committed between December 21, 2004, and December 20, 2005, should not be merged. Consequently, we do not address that count (renumbered count 17).

10, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. To demonstrate plain error, "an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus * * *." *Rogers* at ¶ 3. "[A] defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph three of the syllabus.

{¶34} With respect to K.R., Austin was convicted of committing (1) one count of rape and one count of GSI between January 12, 2003, and January 11, 2004; and (2) one count of rape and one count of GSI between January 12, 2004, and January 11, 2005. Austin argues that each set of his rape and GSI convictions should have merged because "[t]here was no distinguishing evidence presented at trial to establish that the offenses were separately committed, resulted in[ ]separate identifiable harm, or were committed with a separate motivation * * *."

{¶35} As noted in our discussion of Austin's first assignment of error, K.R. testified that she was five years old when she started kindergarten and when Austin began raping her. She stated that Austin raped her during "the wormy game" while she was in kindergarten and first grade and that the game included "touch[ing] the other person on their penis or their vagina * * *." She testified that her family moved during first grade and the abuse continued at her new house. She described how Austin would call her to his room after school, would instruct her to undress, and then "would start to touch [her]" before engaging in vaginal intercourse with her. She stated that Austin sexually assaulted her in the foregoing manner "three to four times a week" until she was in the third grade.

{¶36} A defendant may be convicted of multiple offenses if his "conduct shows that the offenses were committed separately * * *." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, at paragraph three of the syllabus. K.R. specifically testified that "the wormy game" Austin forced her to play in kindergarten and first grade encompassed both the "touch[ing] [of] the other person on their penis or their vagina" and vaginal intercourse. She also testified that, from first to third grade, Austin would touch her after she had removed her clothes and would then engage in vaginal intercourse with her. She estimated that Austin sexually assaulted her in the foregoing manners three to four times a week between kindergarten and third grade. Accordingly, even assuming that one particular incident of sexual assault should not have resulted in separate convictions for rape and GSI, Austin has not shown that his convictions for any given year stem from a single incident. The record reflects that the jury could have convicted him for rape as to one incident and for GSI as to a separate incident, occurring on a different day or week. As such, Austin has not shown that there exists "a reasonable probability that [his] convictions are for allied offenses of similar import committed with the same conduct * * *." *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, at ¶ 3.

{¶37} Austin's fifth assignment of error is sustained only to the extent that the State has conceded error. It is overruled with respect to his claim that his two remaining GSI convictions should have merged with his rape convictions.

## ASSIGNMENT OF ERROR VI

DANIEL AUSTIN'S CONVICTIONS FOR RAPE AND GROSS SEXUAL IMPOSITION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶38} In his sixth assignment of error, Austin argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶39}** When considering whether a conviction is against the manifest weight of the evidence, this Court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases in which the evidence weighs heavily against the conviction. *Otten* at 340.

**{¶40}** Austin argues that the jury lost its way in convicting him and in choosing to believe K.R. and L.B., despite their failure to disclose the alleged sexual assaults for a number of years. He notes that the two described virtually all the sexual assaults as having occurred in places where other family members could have seen. According to Austin, "[i]t is simply unbelievable that a minor would commit these acts against other minors in such public places, sometimes with other people present, and that they were never caught." He further argues that, contrary to K.R.'s and L.B.'s testimony, there was testimony that he was not frequently alone with either girl.

**{¶41}** This Court has previously outlined much of K.R.'s testimony in the preceding assignments of error. She described how Austin sexually abused her numerous times over the years, taking advantage of instances when he was alone with her. She testified that she did not

disclose the abuse to anyone at first because she did not understand that it was abnormal behavior for brothers and sisters. When she did learn the truth, she still did not disclose the abuse because Austin threatened to kill their mother if she told. K.R. testified that she was hospitalized for a week at age ten because she attempted suicide. She stated that she tried to hang herself so that the abuse would stop and she would not have to worry about her mother. According to K.R., she ultimately told her mother about the abuse at age seventeen because she overheard a conversation between Austin and their mother. During the conversation, Austin became angry with their mother for taking his daughter to an unfamiliar man's house when he did not know whether the man "[did] drugs * * * [or] touche[d] little girls." K.R. testified that the sheer hypocrisy of Austin's statement caused her to breakdown and tell her mother about the abuse.

{¶42} After K.R.'s disclosure, her mother contacted the police. Her mother confirmed that K.R. told her about the sexual abuse after the aforementioned conversation with Austin in which he accused her of exposing his daughter to a potential pedophile. She confirmed that there were many instances when K.R. and Austin were alone growing up because she had to work. She testified that, at one point, she also attended night school a few nights a week and left the children with their cousins, including L.B. Additionally, K.R.'s mother stated that L.B. walked K.R. home from school when she was in first grade and that the girls and Austin would be unsupervised for about one hour each day.

{¶43} Much like K.R., L.B. testified to a pattern of abuse that began when she was about five years old. She testified that, when she was "probably seven, maybe eight," Austin briefly had vaginal intercourse with her on the carpeted stairs at her house. When she was "[p]robably eight or nine" and the weather was warm, she recalled that he made her sit on his lap on the

couch so that he could have vaginal intercourse with her. When she was "[p]robably nine, maybe ten," she recalled Austin having intercourse with her in the pool outside by pulling her bathing suit to the side and having her on top of him while attempting to support himself from behind.

{¶44} L.B. testified that she was in fourth grade (i.e., between nine and ten years of age) when Austin and his family moved to a new house, and she began walking his younger sister, K.R., home from school each day. She recalled an incident during that school year when Austin called her to his room, had her undress, and had vaginal intercourse with her. She testified that Austin bit her breast during the incident before "he pulled out and [] ejaculated all over [her] chest, [her] stomach, [and her] legs." She further testified that he kissed her and put his tongue in her mouth after she had dressed and was attempting to leave. She stated that there were "several incidents like that at that location that same school year."

{¶45} L.B. testified that, during her seventh grade year (i.e., between twelve and thirteen years of age), Austin lived with her family for several months. While he lived there, Austin pushed L.B. onto the couch one day after school and had vaginal intercourse with her. She recalled another incident at the house when he had vaginal intercourse with her in her bedroom. Further, she recalled instances of Austin wanting her to perform oral sex.

{¶46} L.B. stated that incidents of penetration would occur whenever Austin "had the opportunity * * * [to] get [her] alone * * *." She specified that, between the fall of 2002 and the fall of 2008, Austin penetrated her "[w]eekly, maybe biweekly, just depending on the opportunity at the time." She also testified: "every time that we were not in school, [Austin] did not always penetrate me, but there was always some sort of sexually inappropriate conduct."

{¶47} L.B. testified that she did not initially disclose the sexual assaults because she was afraid no one would believe her and that they would think she just wanted attention. L.B. indicated that the abuse caused her to engage in self-harm as a teenager and ultimately to tell two very close friends what had happened. She did not officially come forward, however, until after she learned that others were making accusations against Austin. She testified that, at that point, she realized Austin had been harming others as well and "it needed to stop."

{¶48} Austin testified in his own defense and vehemently denied ever sexually assaulting either K.R. or L.B. He testified that he was rarely alone with either girl growing up because he preferred to be around his older, male cousins and he played a lot of football after school. According to Austin, he was "heartbroken" and "terrified" when he learned of the allegations because he did not understand why K.R. and L.B. had wrongfully accused him. Although Austin acknowledged that he suggested his half-brother take a polygraph in his stead, he claimed that he made the statement sarcastically. He also presented the testimony of several other family members who testified that they were close with K.R. and L.B. and that the girls had never given any indications of abuse.

{¶49} Having reviewed the record, we cannot conclude that the jury lost its way when it found Austin guilty. Although both K.R. and L.B. waited several years to disclose the abuse, they explained their reasons for not disclosing at an earlier date. Further, while Austin claimed that he was rarely alone with either girl and presented some evidence to that effect, the State presented conflicting evidence, including the testimony of Austin's mother. The jury was in the "best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. This Court has repeatedly held that it "will not overturn a conviction as being against the manifest weight of

the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Barger*, 9th Dist. Medina No. 14CA0074-M, 2016-Ohio-443, ¶ 29. The record reflects that this is not the exceptional case where the evidence weighs heavily against Austin's convictions. *See Otten*, 33 Ohio App.3d at 340. As such, his sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

DANIEL AUSTIN WAS DENIED HIS FUNDAMENTAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND MADE APPLICABLE TO THE STATES BY AND THROUGH THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.

{¶50} In his seventh assignment of error, Austin argues that he received ineffective assistance of counsel. We disagree.

{¶51} In order to prevail on a claim of ineffective assistance of counsel, Austin must show that his "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Austin must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, he must demonstrate that, but for counsel's errors, there is a reasonable probability that the results of his trial would have been different. *Keith* at 534.

{¶52} Austin argues that his counsel was ineffective for two reasons. First, he argues that his counsel was ineffective because he did not renew Austin's motion to dismiss three counts of the indictment (i.e., count 1 and renumbered counts 6 and 15). Austin argues that those three counts ought to have been dismissed because there was no evidence that he committed them when he was at least fourteen years old. Second, he argues that his counsel was ineffective for not objecting to the imposition of allied offenses of similar import.

{¶53} This Court has already vacated renumbered count 15. Moreover, in analyzing Austin's previous assignments of error, this Court has already determined that he (1) was not entitled to a dismissal on count 1 and renumbered counts 6, and (2) was not sentenced to allied offenses of similar import. Accordingly, even assuming his counsel should have either renewed his motion to dismiss or objected to allied offenses at sentencing, Austin cannot demonstrate prejudice as a result of his counsel's performance. *See id.* Austin's seventh assignment of error is overruled on that basis.

### III.

{¶54} Austin's first and fifth assignments of error are sustained in part and overruled in part. His remaining assignments of error are overruled. Austin's convictions under renumbered count 8, renumbered count 9, renumbered count 10, renumbered count 15, renumbered count 16, renumbered count 18, and renumbered count 19 are vacated. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for the trial court to enter a judgment of conviction in accordance with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.