# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Rakeem Jereal Jordan White, Appellant.

Appellate Case No. 2019-000403

———————————

Appeal From Barnwell County
Doyet A. Early, III, Circuit Court Judge

———————————

Opinion No. 5939
Heard May 12, 2022 – Filed August 17, 2022

———————————

**AFFIRMED**

———————————

Appellate Defender Lara Mary Caudy, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General W. Jeffrey Young, Deputy Attorney
General Donald J. Zelenka, Senior Assistant Deputy
Attorney General Melody Jane Brown, and Assistant
Attorney General William Joseph Maye, all of Columbia;
and Solicitor John William Weeks, of Aiken, all for
Respondent.

———————————

**WILLIAMS, C.J.:** In this criminal case, Rakeem White appeals his convictions
for murder and armed robbery. White asserts the trial court erred in admitting a
recorded telephone conversation between him and his girlfriend because the
conversation was not relevant and any probative value of the conversation was

substantially outweighed by the danger of unfair prejudice pursuant to Rule 403, SCRE.  We affirm.

## FACTS/PROCEDURAL HISTORY

In the early morning hours of December 15, 2016, White shot Kort Woodley (Victim), killing him.  Prior to the shooting, White and Rayquon Clifton were at a local bar consuming alcohol and playing pool.  The two left the bar to meet Victim at Chris Dunbar's trailer to purchase crack cocaine from Victim.  Victim arrived at Dunbar's trailer alone, and White and Clifton approached the driver's side door to speak to Victim.  Harry Dukes,[1] an occupant of Dunbar's trailer, came out and stood by the passenger side of Victim's car.  From the driver's seat, Victim reached into the glove compartment of his vehicle, grabbed the drugs, and handed them to White.  Clifton then took the drugs from White and fled the scene on foot.  In response, Victim reached through his window and took hold of White's arm, and, according to Dukes, White pulled a gun from his person, shot Victim in the chest, and ran in the same direction as Clifton.

Immediately after the shooting, Dukes remained by the car and saw the gunshot wound in Victim's chest.  Victim did not respond to Dukes and sped off.  Thereafter, Victim's car traveled across a highway, ramped an embankment, and crashed into the parking lot of the local magistrate's court.  Initially, first responders believed Victim was injured in a single car accident; however, the paramedics on scene quickly discovered a penetrating injury to Victim's chest.  The pathologist who conducted Victim's autopsy concluded that Victim died from blood loss caused by a gunshot wound that entered the left side of his back and exited through his chest.

Officers arrested White hours after the shooting.  From the detention center, White called his girlfriend Maggie Aldrich, and their conversation was recorded.  During the conversation, Aldrich told White that his family was not visiting him at the detention center because they knew he was going to come home.  Aldrich then stated that Victim's autopsy revealed he died from injuries sustained from his car crash, not the gunshot wound.  White's response was one of excitement, claiming "that's the best Christmas present ever" and yelling to a friend that he had good news to tell him.  White and Aldrich then spoke about how the prosecution had nothing on him and that they were "f***ed all the way around."

---

[1] Dukes was related to Victim by marriage.

A Barnwell County grand jury indicted White for murder and armed robbery. White filed a pretrial motion to suppress the fifteen-minute, recorded phone conversation, arguing (1) it constituted inadmissible hearsay, (2) it was irrelevant to the charges, and (3) its probative value was substantially outweighed by its unfair prejudice. During a pretrial hearing, White argued the conversation was not probative because nothing in the call indicated White was involved in the crime and that his reaction to the false information would have been the same regardless of whether he was involved in the shooting. He also argued that, if anything, the conversation constituted inadmissible character evidence because his response shows callousness and indifference to the fact that someone died. The State argued the conversation was probative because it was evidence of White's guilty conscience. The trial court issued a written order denying White's motion to suppress the recorded conversation, and the recording was published to the jury in its entirety at trial. The jury found White guilty as charged, and the trial court sentenced White to forty years' imprisonment for murder and thirty years' imprisonment for armed robbery. This appeal followed.

## ISSUE ON APPEAL

Did the trial court err in admitting the recorded conversation between White and Aldrich?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Jenkins*, 412 S.C. 643, 650, 773 S.E.2d 906, 909 (2015). The decision of whether to admit or exclude evidence is within the sound discretion of the trial court. *State v. Jackson*, 384 S.C. 29, 34, 681 S.E.2d 17, 19 (Ct. App. 2009). This court will not disturb the trial court's admissibility determinations absent a prejudicial abuse of discretion. *State v. Adkins*, 353 S.C. 312, 326, 577 S.E.2d 460, 468 (Ct. App. 2003). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *State v. Irick*, 344 S.C. 460, 464, 545 S.E.2d 282, 284 (2001).

## LAW/ANALYSIS

White argues the trial court erred in admitting the recorded conversation because White's remarks and response to the information disclosed by Aldrich was not relevant to show consciousness of guilt and any probative value the conversation had was substantially outweighed by unfair prejudice. We affirm.

We find the recorded conversation between White and Aldrich was relevant to show White's consciousness of guilt. Evidence that is relevant is admissible unless it is excluded by the United States Constitution, the South Carolina Constitution, South Carolina's statutes and rules of evidence, or other rules promulgated by the South Carolina Supreme Court. Rule 402, SCRE. Evidence is "relevant" when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE; *see also State v. Alexander*, 303 S.C. 377, 380, 401 S.E.2d 146, 148 (1991) ("Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears."). The test for relevancy is not stringent, and its standard is not difficult to vault. *See State v. Sweat*, 362 S.C. 117, 127, 606 S.E.2d 508, 513 (Ct. App. 2004) ("Evidence is admissible if 'logically relevant' to establish a material fact or element of the crime; it need not be 'necessary' to the State's case in order to be admitted."). Indeed, evidence that carries the probative weight of a feather tips a balanced scale and assists the jury in arriving at the truth of an issue. *See Sweat*, 362 S.C. at 126, 606 S.E.2d at 513 ("Evidence which assists the jury in arriving at the truth . . . is relevant.").

During trial, the State introduced the conversation because it tended to show that White knew he shot Victim, that he was being detained for Victim's murder, and that he was excited to learn (even though based on false information) that Victim's gunshot wounds were not the ultimate cause of his death. In other words, the conversation indirectly pointed to White as Victim's murderer because White's elated reaction to the news regarding the cause of Victim's death showed White was conscious of the possibility that the gunshots he fired hit Victim and caused his death. The evidence was circumstantial, and thus, provided the jury with multiple avenues of interpretation, and both White and the State were able to argue their own competing inferences and rationalizations deduced from the evidence to the jury. Because the conversation tended to prove White was conscious that he shot Victim and believed he caused Victim's death, we find the conversation was logically related to whether White was guilty of Victim's murder. *See Sweat*, 362 S.C. at 126–27, 606 S.E.2d at 513 ("Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears, and it is not required that the inference sought should necessarily follow from the fact proved.").

Further, we find the trial court's admission of the conversation did not violate Rule 403, SCRE. Although evidence may be relevant, the trial court, as the gatekeeper

of evidence, must exercise discretion and exclude such evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, SCRE; *State v. Edwards*, 383 S.C. 66, 73, 678 S.E.2d 405, 408–09 (2009) ("[T]rial [courts] serve[] a critical gatekeeping role, under Rule 403, SCRE, and otherwise, in determining the admissibility of evidence."). "[T]he standard is not simply whether the evidence is prejudicial; rather, the standard under Rule 403, SCRE is whether there is a danger of *unfair* prejudice that *substantially* outweighs the probative value of the evidence." *State v. Collins*, 409 S.C. 524, 536, 763 S.E.2d 22, 28 (2014). "As a general rule, any guilty act, conduct, or statements on the part of the accused are admissible as some evidence of consciousness of guilt." *State v. McDowell*, 266 S.C. 508, 515, 224 S.E.2d 889, 892 (1976).

White argues *State v. King*[2] is instructive. In *King*, the defendant called a cab company requesting a driver pick him up, and the operator recorded the cell phone number the defendant used. 422 S.C. at 51, 810 S.E.2d at 20. After the cab driver picked up the defendant, he heard the defendant cock a pistol. *Id.* The driver turned around, and the defendant raised the gun to the driver's face and demanded money. *Id.* The defendant ultimately shot the driver in the elbow. *Id.* at 52, 810 S.E.2d at 20. While detained, the defendant made sixty-three calls from the detention center in one month to the cell phone number he used to call the cab company on the night of the crime. *Id.* at 53, 810 S.E.2d at 21. The calls were recorded, and during the first call, the defendant provided an unidentified person with a pin number to access the internal content of the cell phone. *Id.* At trial, over an objection by the defense, the trial court allowed the State to publish the entire fifteen-minute recording of the phone call to establish the defendant owned the cell phone number that called the cab company on the night of the crime. *Id.* at 53, 810 S.E.2d at 21, 29. The supreme court listed three reasons in determining the trial court abused its discretion in admitting the recording: (1) the trial court adamantly refused to listen to the recording prior to publishing it to the jury; (2) without listening to the recording, the trial court was unable to determine if the probative value of the recording outweighed any unfair prejudice; and (3) the limited probative value of the recording was outweighed by the danger of unfair prejudice because the recording was laced with profanity, racial slurs, and impermissible inferences of the defendant's prior bad acts. *Id.* at 68–69, 810 S.E.2d at 29–30.

*King* is distinguishable from the facts of this case. First, the trial court listened to the recorded conversation between White and Aldrich and ruled the conversation

---

[2] 422 S.C. 47, 810 S.E.2d 18 (2017).

was admissible. Second, although the conversation included casual profanity, neither White nor Aldrich cursed in abundance, the conversation did not include racial slurs, and it did not reference any prior bad acts of White. Therefore, *King* is inapplicable.

We find the probative value of the recorded conversation was not substantially outweighed by the danger of unfair prejudice. Relevant circumstantial evidence regarding a defendant's guilty conduct may be admissible under Rule 403 as a circumstance tending to show the defendant's consciousness of guilt even though it is not conclusive evidence of guilt. *See Edwards*, 383 S.C. at 72, 678 S.E.2d at 408 (stating that if linked to the defendant, evidence of witness intimidation may be admitted to show consciousness of guilt); *State v. Cartwright*, 425 S.C. 81, 91–93, 819 S.E.2d 756, 761–62 (2018) (finding a defendant's attempted suicide may be admitted to prove consciousness of guilt if the evidence survives a Rule 403 analysis and establishes a nexus between the suicide attempt and a guilty conscience derivative of the offense for which the defendant is on trial); *State v. Martin*, 403 S.C. 19, 28–29, 742 S.E.2d 42, 47 (Ct. App. 2013) (stating evidence of a defendant's flight is admissible to establish a guilty conscience when the flight was the product of a guilty conscience and the consciousness of guilt was related to the underlying crime of the defendant's charges).

Here, the conversation between White and Aldrich was probative of White's guilty conscience. During the conversation, Aldrich explained to White that his family was not visiting him because they knew White was coming home. The family knew this because Aldrich heard Victim's autopsy revealed that he died from injuries sustained from the car crash, not the bullet wounds inflicted by White. White responded in excitement, stating that it was the best Christmas gift he could receive, yelling to another inmate that he had good news to share, and finally stating he could barely speak as he laughed. The two then discussed how the State did not have a case against White due to the autopsy results, concluding that "they [were] f\*\*ked all the way around." White's response to this false information circumstantially sheds light on his guilty conscience for the murder of Victim. This interpretation of White's conduct provides a link between his knowledge that he fired shots at Victim and the ultimate cause of Victim's death. Further, White's excited response was in relation to the crime with which he was charged—Victim's murder—and indirectly bears on White's understanding of his own participation in Victim's death. Moreover, the evidence is inherently reliable because it is a candid conversation between White and Aldrich.

Although the conversation contained profanity, it was not used in a vulgar, threatening, or disparaging manner.  White and Aldrich carried a conversational tone throughout the call.  This would be an unlikely reason for the jury to draw an unfairly prejudicial inference regarding White's guilt from the conversation.  *See State v. Johnson*, 433 S.C. 550, 558–59, 860 S.E.2d 696, 701 (Ct. App. 2021) ("In criminal cases, the term 'unfair prejudice' 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997))).  While the entirety of the fifteen-minute phone call was not relevant to White's trial, this fact, combined with the profanity, does not *substantially* outweigh the conversation's probative value.  Based on the foregoing, we find the trial court did not err in admitting the conversation under Rule 403, SCRE.

## CONCLUSION

Accordingly, White's convictions are

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**